ANDREW HENDERSON *et al.*

*v.*

F. F. DENNIS *et al.*

*Opinion filed December 21, 1898—Rehearing denied February 9, 1899.*

1. BOUNDARIES—*mutual mistake of owners in locating division fence may be corrected.*  The building of a division fence by agreement between adjoining owners, in the mistaken belief that they were placing said fence on the true boundary line between their lands, there being no dispute as to the line or contention for a different line, does not conclude one of the parties from insisting upon the true line when ascertained.

2. SAME—*when words "land line" will be construed as synonymous with "boundary line."*  The words "land line," used in an instruction with reference to the true boundary line, will be construed as synonymous with the words "boundary line," where the only question in-

volved is whether the boundary line was in dispute when an incorrect line was agreed upon.

3. INSTRUCTIONS—*when error in instruction is harmless.* An instruction in a disputed boundary case, which holds that a parol agreement upon a line must be followed by possession "and the making of improvements," is not prejudicial where the fact of the making of improvements in the particular case is not disputed.

APPEAL from the Circuit Court of Washington county; the Hon. B. R. BURROUGHS, Judge, presiding.

JAMES A. WATTS, for appellants:

It is competent for owners of adjoining land to adopt the line established by a prior survey as their division line, and if they do so adopt any such line they are bound by the agreement. *St. Bede College* v. *Weber,* 168 Ill. 324; *Bloomington* v. *Cemetery Co.* 126 id. 221.

Adjoining land owners may agree and fix a boundary line between them by parol, irrespective of the fact that there is or is not a dispute or uncertainty about the true boundary line. *Cutler* v. *Callison,* 72 Ill. 114; *Bitter* v. *Saathoff,* 98 id. 266; *Grim* v. *Murphy,* 110 id. 271.

CHARLES T. MOORE, for appellees.

Mr. JUSTICE WILKIN delivered the opinion of the court:

This was an action of ejectment begun in the circuit court of Washington county by appellees, against appellants, September 29, 1896. The controversy is over a wedge-shaped strip of land off the west side of the northeast quarter of section 14, township 3, south, range 3, west of the third principal meridian, in Washington county, lying between the quarter section line running north and south in section 14, and a line drawn from the middle point of the south line of section 14 north-easterly to a point two chains and twenty-eight links east of the middle of the north line of section 14, and intersecting the quarter section line of section 14, running east and

west, at a point one chain and fourteen links west of the center of that line. To the amended declaration of plaintiffs defendants filed a plea of not guilty. A trial was had April 12, 1897, the jury returning a verdict in favor of plaintiffs. On motion of defendants the trial court granted a new trial. A second trial was had April 14, 1898, again resulting in a verdict in favor of plaintiffs. After overruling a motion for a new trial the court rendered judgment of ouster against defendants, and for costs. Defendants appeal to this court.

Appellees, plaintiffs below, claim the strip of land in dispute as a part of the north-east quarter of section 14, while appellants claim it because of an alleged settlement of a disputed boundary line between the north-east and north-west quarters of section 14, made in the year 1886, by and between the respective owners of each quarter section, through whom the present parties claim title.

On the trial of the case the following stipulation was entered into between the attorneys for the respective parties: "That the title of the north-east quarter of section 14, township 3, south, range 3, west, is in the plaintiffs by deed dated July 25, 1896, and the title to the north-west quarter in same section is in defendant Mc-Williams by deed dated May 11, 1891, and all further proof waived as to title, demand and possession."

The evidence on the trial respecting the boundary settlement in 1886 was conflicting. Appellees contend that at the time of that agreement there was no dispute as to where the boundary line ought to have been, but that a survey had been made in 1882 by a county surveyor named McCord, and a stone was placed on the northern boundary of section 14 to mark the point of intersection of the north and south quarter section line; that the agreement was, in effect, to build a partnership fence between the two quarter sections on the line designated by the McCord survey. Appellants, on the other hand, contend that there was a dispute as to where the bound-

ary line ought to be, and that the agreement of 1886 was to forever settle it between them. The testimony of W. B. Anderson shows very satisfactorily that, as a matter of fact, the true land line between these quarter sections is located, as near as can be determined, at the distances contended for by appellees. As to the agreement of 1886, we are satisfied that the evidence fairly tended to show that the agreement was, not to settle a disputed question of whether the McCord line was the correct one or not, but to simply locate that line and establish a partnership fence there, both parties believing at that time that that was the correct line. It is claimed on behalf of appellants that the court erred in its instructions to the jury.

In the American and English Encyclopedia of Law (2d ed. vol. 4, p. 860, *et seq.*) certain general rules are formulated from the many conflicting decisions on the subject of boundary lines established by parol agreement. The subject is discussed under three divisions:

*First*—Agreement.—"Where the boundary line between two estates is indefinite or unascertained, the owners may, by parol agreement, establish a division line, and the line thus defined will afterwards control their deeds, notwithstanding the Statute of Frauds,"—citing *Yates* v. *Shaw*, 24 Ill. 368; *Bauer* v. *Gottmanhausen*, 65 id. 499; *Bybee* v. *Hageman*, 66 id. 519; *Thomas* v. *Sayles*, 63 id. 363; *Kerr* v. *Hitt*, 75 id. 51; *Darst* v. *Enlow*, 116 id. 475; *Fisher* v. *Bennehoff*, 121 id. 426; *Hubbard* v. *Stearns*, 86 id. 35; *Cutler* v. *Callison*, 72 id. 113; *McNamara* v. *Seaton*, 82 id. 498; *Grim* v. *Murphy*, 110 id. 271; *City of Bloomington* v. *Bloomington Cemetery Ass.* 126 id. 221; *Schneider* v. *Botsch*, 90 id. 577.

*Second*—Acquiescence.—"In order to make a change in a certain and known boundary line binding there must have been a clearly proved practical location of the new line marked upon the ground, and an acquiescence in such line for a time long enough to bar a right of entry under the Statute of Limitations." *Hubbard* v. *Stearns*, 86 Ill. 35; *Thomas* v. *Sayles*, 63 id. 363; *Darst* v. *Enlow*, 116 id. 475; *Yates*

v. *Shaw*, 24 id. 368; *Sheets* v. *Sweeney*, 136 id. 336; *Schoon-maker* v. *Doolittle*, 118 id. 605.

*Third*—Estoppel.—"Although agreement and acqui-escence both operate by way of estoppel, there are in-stances in which estoppel applies as a positive rule of law to establish a boundary line through the direct act or deed of the parties or their predecessors in title,"— citing *Zearing* v. *Raber*, 74 Ill. 409, and *Fisher* v. *Bennehoff*, 121 id. 426.

This court, in *Crowell* v. *Maughs*, 2 Gilm. 419, said: "It is settled, however, that the proprietors of adjoining tracts of land may, by a parol agreement, settle a disputed boundary line between them. Such an adjustment of the boundary, if followed by corresponding possession, may be binding on the parties, not because it passes title, but because it determines the location where the estate of each is supposed to exist.—*Jackson* v. *Dysling*, 2 Caines, 198; *Kip* v. *Norton*, 12 Wend. 127." That case has been fol-lowed by this court in its subsequent decisions upon the subject.

The first instruction complained of by appellants is as follows:

"If you believe, from the evidence, that the line claimed by plaintiffs, as surveyed by W. B. Anderson, is the cor-rect land line, then you will find for the plaintiffs, unless you further find that the land line as claimed by defend-ants was agreed upon as the land line by Boucher and Rountree, and upon this latter proposition the defendants are required to produce the preponderance of the evidence before you can find for them on the alleged agreement."

It is claimed that the words "land line," where used in connection with the agreement of Boucher and Rountree, were incorrect, and that they are not synonymous with "boundary line." We are unable to attribute so technical a meaning to the phrase "land line" that it may not accommodate itself to the relation in which it is used. The only defense insisted upon by defendants was, that

in 1886 the boundary line was in dispute and there was an agreement to adopt a line as the correct line. If defendant's position was correct, then the line adopted was the "land line."

The second instruction objected to is as follows:

"While the owners of adjoining tracts of land may, by parol agreement, settle and establish permanently a boundary line between their lands, which, when followed by possession and the making of improvements, will be binding and conclusive and cannot afterwards be disputed, such agreements must be proven by a preponderance of the evidence, and the agreement must be such as to operate as a settlement of what was unsettled."

It is true, as contended by appellants, that the owners of adjoining lands, when the boundary is in dispute or indefinite or unascertained, can agree upon a boundary line, and the same will be binding upon them without "*the making of improvements*," and in this respect the instruction is incorrect. But there were improvements made in this case and the fact was not disputed, so that the error was clearly a harmless one. We have previously disposed of the other objection urged to this instruction.

The third instruction complained of is as follows:

"That acquiescence in a line without an agreement as to its correctness does not bind a party unless such acquiescence extends for more than twenty years."

If by this instruction the jury were to understand that the parties could not agree upon and settle a disputed, indefinite or unascertained boundary line without agreeing that it was the true mathematical line which a perfect survey would show, as contended, then it is certainly erroneous. But we cannot believe a jury could so interpret it. If the parties agreed that it was correct that was enough. It was correct from that time on.

Finding no substantial error in this record, the judgment of the circuit court will be affirmed.

*Judgment affirmed.*