THOMAS J. ROBERTS *et al.*

*v.*

JOHN V. BIRKS.

*Opinion filed October 23, 1906.*

1. BOUNDARIES—*establishment of undefined boundary by parol is binding.* Where a boundary line between two estates is undefined and unascertained, the owners may by parol agreement establish a division line, which will afterwards control their deeds, notwithstanding the Statute of Frauds.

2. SAME—*what necessary to change a known boundary.* In order to change a certain and known boundary line there must be a clearly proved, practical location of the new line marked upon the ground, and an acquiescence in such new line for a time long enough to bar entry under the Statute of Limitations.

3. SAME—*when half century's possession does not control.* A half-century's possession of land with reference to a boundary line does not control in ejectment, where the evidence shows that shortly before the suit the plaintiff and defendant, in order to ascertain the true boundary, neither being certain of its location, shared the expense of a survey and agreed to build a fence upon the new line, but that after plaintiff had put up part of the fence the defendant tore it down and refused to allow it to be built.

APPEAL from the Circuit Court of Macon county; the Hon. W. C. JOHNS, Judge, presiding.

This is an action of ejectment commenced in the circuit court of Macon county by appellee, John V. Birks, against the appellants, Thomas J. Roberts and Arthur Roberts, to

recover possession of a strip of land from twenty to twenty-five feet in width across the length of an eighty-acre tract.

Seven or eight years prior to the commencement of the suit the appellant Thomas J. Roberts purchased and entered into possession of the east half of the south-west quarter of section 8, township 16 north, range 1, east of the third principal meridian, in Macon county. On May 17, 1902, the appellee purchased and entered into possession of the south-east quarter of the same section. The lands of Roberts and appellee were contiguous along a line extending north and south the distance of half a mile, and were separated by an old hedge, which by the spring of 1904 had become of little value by reason of gaps or openings in it. This hedge had been set out between 1855 and 1865 by the then owners of the respective tracts, and had stood in the same position, unchanged, for a period of at least nearly fifty years. The north half of the hedge belonged to and was cared for by the appellee and his son, and the south half was cared for by appellants and their grantors. Early in the spring of 1904 appellee sent his son to appellant Arthur Roberts to learn if he would agree to a survey of their lands, with a view of ascertaining the true boundary line between them. He was referred by Arthur Roberts to his father, Thomas J. Roberts, the owner of the land, who agreed to have the survey made and to pay one-half of the expense. In July, 1904, a survey was made from the government stones, which disclosed that the hedge was some twenty to twenty-five feet east of the quarter section line, both at the north and south ends. After the survey each party paid his half of the expense, and the following spring appellee's son started to build his north half of the fence on the newly established line. He was served with notice by appellants to remove the fence already built. Appellee endeavored to enjoin the removal of the same, but failed. Appellants thereupon tore out that portion of the fence which had been built and threw it over the hedge on appellee's side. Appellee then began

this suit in ejectment, and upon the first trial obtained judgment for the possession of the land. Appellants paid the costs and took a new trial under the statute, and upon the second trial judgment was again rendered against them. From that judgment this appeal has been prosecuted.

LeForgee & Vail, for appellants.

Redmon & Hogan, and Nelson & Whitley, for appellee.

Mr. Justice Wilkin delivered the opinion of the court:

It is clear that appellee and his grantors were vested with the legal title, derived from the government, to the strip of land in controversy, but the possession at the time of the commencement of the suit was in appellants, and they and their grantors had been in possession for some fifty years. Some time between the years 1855 and 1865, as above stated, the respective owners planted a hedge fence dividing their lands as then occupied. The exact circumstances or agreement under which it was planted does not appear. There is nothing to show whether it was in fact intended to be on the line or whether it was in any way established as the line between the two quarter sections, but it does appear that the parties who owned the land on either side of it had possession up to the hedge and cultivated it, continuing in such possession and cultivation for about half a century. It is claimed by appellants that this open, notorious, continuous and peaceable possession of the strip in controversy, under claim of ownership, by them and their grantors, was sufficient to bar the rights of appellee and his grantors, and thus establish title in them by virtue of the Statute of Limitations. No doubt if appellants had based their rights upon the claim they now make and refused to recognize any of the rights or claims of appellee, their contention would be tenable and they would have been entitled to a judgment in

their favor. It is claimed, however, that they recognized appellee's rights, at least to the extent of admitting that the line was in dispute, and agreed to employ a surveyor to establish the correct line. After the true line was established, appellee claims that appellants recognized it and agreed to build fences upon the new line, and in pursuance of such agreement appellee took possession. This is denied by the appellants.

The law governing the establishment of boundary lines between lands in cases similar to this has been before this court on many occasions and may be considered well settled. Many of the cases are collated and cited in *Henderson* v. *Dennis,* 177 Ill. 547, in which we held that where the boundary line between two estates is undefined and unascertained, the owners may, by parol agreement, establish a division line, and the line thus defined would afterwards control their deeds notwithstanding the Statute of Frauds. But in order to make a change in a certain and known boundary line there must have been a clearly proved, practical location of the new line marked upon the grounds, and an acquiescence in such line for a time long enough to bar a right of entry under the Statute of Limitations; also, that the proprietors of adjoining tracts of land may, by a parol agreement, settle a disputed line by agreement between them, and such an adjustment, if followed by corresponding possession, may be binding on the parties, not because it passes title, but because it determines the location where the estate of each is supposed to exist.

As we understand the contention of appellants they do not insist that the law is not as above stated, but they claim that the facts in this case do not come within that rule of law. The question at issue therefore resolves itself rather into one of fact than of law.

In support of the contention of appellee, the evidence shows that some time in the spring of 1904 the son of appellee went to Thomas J. Roberts, one of the appellants,

who was the owner of the land, and asked him if he knew whether or not the hedge was on the proper line between the two quarter sections, and was told by Roberts that he did not know whether it was on the proper line or not. Birks then asked Roberts if he would join in a survey to establish the true line. Roberts asked how much it would cost, and was informed by Birks that he did not know. Roberts then told Birks to find out the cost and report to him. Birks made inquiry and reported what the probable cost would be, and Roberts said it was all right,—to go ahead; that he would join in the survey and pay his part of the expense, but that they must get disinterested parties to carry the chain. The survey was accordingly made, by which it was ascertained that the old hedge was from twenty to twenty-five feet from the true line. Before the survey was completed, Thomas Roberts said to appellee that if they found he had some of his (Birks') land he wanted to buy it, and would pay $150 per acre for it. Appellee said for him to wait until they found out about the line; that he did not have any land to sell. About one week after the survey was completed, a son of appellee and appellant Arthur Roberts placed stones at the corners marking the newly established line, and Roberts paid his share of the expense of the survey. The evidence shows that on the day the stones were set the following conversation was had between the appellant Arthur Roberts and the son of appellee: Roberts inquired, "Are you going to sell us the strip of land?" The son replied, "No, we ain't; we don't want to sell it." Roberts said, "Well, I don't know when I will get up my piece of the fence; I don't know whether I can put it up this fall or not." The son replied, "I will have to put mine up, for we have no fence so we can stock the field." Roberts said, "If I can get mine up this fall I will do it, but if I can't I will put it up next spring." The reply was, "This end will stand until then; there isn't anything so pushing about it." Roberts said, "When I get my fence up I am going to cut those

apple trees down." And the answer was, "That's just what I would do with them." Roberts said, "Well, will you take care of the old hedge?" and Birks answered, "All right."

At the time the new line was established the strip in dispute was occupied by the crops of appellants. Nothing was done in the way of taking possession by appellee or exercising acts of ownership over it until the spring of 1905, when he sowed some grass and started to build a wire fence. He had the posts set and most of the woven wire put on when he was taken sick. Upon his recovery he found the fence had been pulled up and thrown over on his side of the hedge.

This evidence on behalf of appellee as to the establishment of the new boundary line, and the agreement concerning it and the taking possession thereunder, is not disputed in any way by appellants. All the evidence offered by them was merely in support of their contention that they were in possession for more than the statutory period. Appellee's evidence, standing alone, in our opinion was sufficient to warrant the jury in finding that there was such an agreement between the parties for the establishment of an undetermined or unsettled boundary line, and a sufficient taking possession under the new agreement, as to establish appellee's right to recover possession of the disputed premises.

Complaint is made of the ruling of the court in the giving of the second and fifth instructions on behalf of appellee and the refusal of the sixth offered on behalf of appellants. We have examined these instructions and duly considered the argument of counsel for appellants in support of their contention, and we are of the opinion that the jury were fully and fairly instructed as to the law governing the rights of the parties, and no reversible error was committed in giving the second and fifth instructions asked by the appellee or in refusing the sixth offered by the appellants.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*