## Jacob P. LaMont

*v.*

## Charles O. Dickinson.

*Opinion filed April 18, 1901.*

1. BOUNDARIES—*when adjoining owners are estopped to dispute the boundary.* If the boundary line between adjoining lands is in dispute or is unascertained, and the owners employ a surveyor to run a line, which is then agreed upon by them as the boundary, and possession of their respective lands is taken and held and improvements are made by them in accordance therewith, recognizing such line as the boundary, each is estopped to assert that such line is not the true boundary.

2. SAME—*what questions concerning location of boundary are for the jury.* In trespass *quare clausum fregit* involving disputed boundary, it is for the jury to determine, from the evidence, as questions of fact, where the line ran as located by a surveyor employed by the then owners of the lands, whether such line was agreed upon by them as the boundary line, and whether, in pursuance of such agreement, each entered into and held possession of their respective lands as bounded by such line and made improvements with reference thereto.

3. SAME—*effect of parol agreement establishing boundary—Statute of Frauds.* Where the boundary line between adjoining lands is indefinite or unascertained, the owners may by parol agreement establish a division line, which will afterwards control their deeds notwithstanding the Statute of Frauds, the principle being, that the effect of the agreement is not to pass real estate from one party to another, but simply to define the boundary line to which their respective deeds extend.

WRIT OF ERROR to the Circuit Court of Hancock county; the Hon. JOHN A. GRAY, Judge, presiding.

G. EDMUNDS, for plaintiff in error.

APOLLOS W. O'HARRA, for defendant in error.

Mr. JUSTICE HAND delivered the opinion of the court:

This is an action of trespass *quare clausum fregit*, commenced in the Hancock county circuit court by defendant in error, against plaintiff in error, for breaking and en-

tering his close on the east half of the south-east quarter of section 36, township 5, north, range 9, west, Hancock county, Illinois. The defendant filed the general issue and three special pleas. The first special plea averred that the defendant was the owner of the west ninety acres of the south-west quarter of section 31, township 5, north, range 8, west, and that the trespasses complained of were committed on said land and not on the east half of the south-east quarter of section 36, township 5, north, range 9, west, as by the said declaration is supposed. The second special plea averred that the land on which said several trespasses charged in said declaration were supposed to have been committed was the land of the defendant, and not of the plaintiff; and the third special plea averred that said east half of the south-east quarter of section 36, township 5, north, range 9, west, adjoins on the west the west ninety acres of the south-west quarter of section 31, township 5, north, range 8, west, which was owned and occupied by the defendant, and that at the time of the committing of said trespasses there was no fence between said tracts of land, and that the defendant committed said several supposed trespasses in erecting a fence on his own land, near the division line, as he of right might do. Replications were filed to said pleas, averring that the said supposed trespasses were committed upon the lands of the plaintiff and not upon the lands of the defendant. A trial was had, resulting in a verdict in favor of the plaintiff for one cent damages, and the court, after overruling a motion for a new trial, entered judgment on said verdict, to which ruling of the court in overruling said motion for a new trial and entering judgment on said verdict the defendant excepted, and has sued out this writ of error to reverse such judgment.

The parties to this suit own adjoining farms, and this controversy grows out of a dispute over the boundary line between the same. Said lands were formerly owned jointly by H. R. Dickinson, the father of defendant in

error, the plaintiff in error, and the heirs-at-law of David Barber, deceased. During the year 1889 a partition of these lands, together with other lands, was had between the owners in the Hancock county circuit court. The east half of the south-east quarter of section 36, township 5, north, range 9, west, was set off to H. R. Dickinson, and the west ninety acres of the south-west quarter of section 31, township 5, north, range 8, west, was set off to plaintiff in error, other lands being assigned to the heirs of David Barber, deceased. The partition having been made by the commissioners without the aid of a surveyor, and A. D. Barber having purchased the land set off to the Barber heirs, H. R. Dickinson, A. D. Barber and the plaintiff in error in the year 1889 employed J. H. Horney, the county surveyor of Hancock county, to locate and establish the dividing lines between the lands so partitioned. In the month of November of that year Horney, with the assistance of H. R. Dickinson, A. D. Barber and William LaMont, who represented his father, the plaintiff in error, surveyed and established said lines and made a plat showing such survey. A railroad crosses said lands in an easterly and westerly direction about thirty rods from the south line of the sections. Within two years after such survey the plaintiff in error built a fence upon the boundary line as established by such survey, from the south line of the section north to the railroad. From the railroad to the north line of said lands the land is low and covered with timber, and remained unfenced until the year 1898, when the defendant in error, having bought the tract formerly owned by his father, built a fence upon his east line from the railroad to his north line, on a line with the fence of the plaintiff in error south of the railroad, and upon the line, as he claims, established in 1889 by Horney. The plaintiff in error, claiming that the fence of defendant in error as built by him was not upon the line established by Horney in 1889, had said boundary line re-surveyed by Horney, who upon

the re-survey located the same as before and upon the line upon which the division fences between said farms, as built by the plaintiff in error south of the railroad and the defendant in error north of the railroad, then stood. In surveying said boundary line in 1889 Horney testified that he started at the common corner of the four sections at the south end of the boundary line between these parties and ran north with a variation of six degrees east. In the re-survey in 1898 Horney re-established said line, which he testifies is in accordance with the original government survey of said line as shown by a copy of the field notes on file in Hancock county. At the time of the re-survey in 1898 the plaintiff in error insisted that the boundary line between said farms ran due north from the common corner of the four townships, and, being dissatisfied with the re-survey, had a line surveyed due north from the common corner of said townships, which he claims is the true boundary line between said farms, and thereupon built a fence thereon from the railroad to the north line of said farms, said line running west of the line claimed by the defendant in error, tore down the fence of the defendant in error, and proceeded to cut timber and plow up the soil on the land between the line claimed by him to be the boundary line and the line claimed by the defendant in error to be the boundary line. The land in dispute is about eight acres, in the shape of a wedge, located between said lines. The controversy, therefore, between the parties to this suit, in short, is, does the boundary line between their lands run due north from the common corner of said four townships, or does it run north therefrom with a variation of six degrees east?

From the evidence in this case the location of the range line as originally established by the United States government, which forms the boundary line between said farms, is somewhat uncertain, the plaintiff in error claiming that it runs due north, while the defendant in error

claims it runs north with a variation of six degrees east from the common corner of said townships and coincides with the line run by Horney in 1889. If the line surveyed by Horney in 1889 was agreed upon by plaintiff in error and H. R. Dickinson, the ancestor in title of the defendant in error, as the dividing line between their lands, and possession of their respective lands was taken and held and improvements made thereon by each of them in accordance with such division, and the same has been recognized and treated as the true line between their farms from the time of such survey, each is estopped from asserting that the line so agreed upon is not the true line between their respective tracts of land, and the question as to where the range line between sections 31 and 36 was originally established by the government survey becomes immaterial. *Yates* v. *Shaw,* 24 Ill. 368; *Cutler* v. *Callison,* 72 id. 113; *Grim* v. *Murphy,* 110 id. 271; *City of Bloomington* v. *Bloomington Cemetery Ass.* 126 id. 221; *Sheets* v. *Sweeney,* 136 id. 336; *Berghoefer* v. *Frazier,* 150 id. 577; *City of Mt. Carmel* v. *McClintock,* 155 id. 608; *St. Bede College* v. *Weber,* 168 id. 324; *Henderson* v. *Dennis,* 177 id. 547; *Clayton* v. *Feig,* 179 id. 534.

In *Clayton* v. *Feig, supra,* on page 541 we say: "The law applicable to this branch of the case, deducible from the decisions of this court, may be stated thus: Where there is a dispute between adjoining owners of land as to the true boundary line, or that line is unascertained, they may establish it, first, by parol agreement and possession in pursuance thereof, and the line so agreed upon will be binding upon them and their privies in estate; second, such an agreement may be implied from the unequivocal acts and declarations of the parties and acquiescence for a considerable length of time; third, such an agreement, either express or implied, is enforceable both at law and in equity, whether the period of limitation has run or not; fourth, the line may be established by way of estoppel, without any agreement, when the parties

have had undisturbed possession in conformity thereto
for more than twenty years."

It was a question of fact for the jury to determine
from the evidence where the line ran as located by
Horney in 1889, whether it had been agreed upon be-
tween the owners of the two tracts as the dividing line
between them, and whether, in pursuance of such agree-
ment, each entered into, retained possession of and made
improvements on his own tract as bounded by that line.

As has been said, after the survey made by Horney
in 1889 there was no fence built along that part of the
line north of the railroad until defendant in error built
his fence, in 1898.  Before beginning the construction of
said division fence north of the railroad defendant in er-
ror had a conversation with plaintiff in error.  He says:
"Before I built my fence I talked to defendant at lumber
office in Hamilton.  I said to him, 'Can't we go down and
stake that line through and put in our fences?'  He said,
'Certainly; I guess so.'  He said, 'Where do you under-
stand the line to be?'  I said, 'I understand the line to
be on a line with the fence going down the hill, in the
neighborhood of the big cottonwood tree, running in the
same direction with the fence coming down the hill.'  He
said, 'No, that is not the line at all; the line is away west
of the cottonwood tree.'  'Well,' I said, 'I don't think
we can agree on the line.'  I said, 'Suppose we employ
Spence to find the line; I am willing to pay my half.'
He said, 'No, that line has already been run and surveyed
by Mr. Horney, and I accepted his survey as my portion
of the land.'  After that I had a conversation with de-
fendant.  He said, 'Your father has a plat of that survey
and so have I.'  I looked, and found the plat of this sur-
vey and showed it to defendant.  He said, 'That is not
the survey of this land.'  I also showed the plat to Mr.
Horney; never showed any other plat to Mr. Horney.
My fence line ran between the big cottonwood tree and
a burr oak."  Referring to the same conversation, John

I. Spence testified: "I heard a conversation at the lumber office at Hamilton about the land in the fall of 1898. Plaintiff, defendant and I were present. Plaintiff asked defendant if he could show the line—where the line was. Defendant said he did not know as he could; he was not there when it was surveyed; that his son was along when the survey was made. Plaintiff wanted me to survey it. Defendant said no. He said Horney had run the line for him, H. R. Dickinson and Barber; that his son was along to represent him and they established the line; that where that line ran there it would stand; said he accepted the line."

After this conversation defendant in error searched for and found the plat made by Horney in 1889 and given to his father. He gave it to John I. Spence, who had been county surveyor for Hancock county for six years, and employed him to make a survey and locate the line as run by Horney in 1889. Spence got Horney's field notes and made the survey, starting at the south end of the land from the common corner of the four townships and running to the north end. He found the corner-stone and the witness trees. The line ran close to the fence of the plaintiff in error which he had built south of the railroad. North of the railroad the line ran east of the big cottonwood tree. The only data Spence had to go by were the field notes and plat of Horney's survey. Spence having re-run the line, defendant in error erected his fence on such line. Horney identified the plat from which the survey was made by Spence as the plat made by him at the time of the survey in 1889 and given to H. R. Dickinson. The only evidence tending to impeach the plat and survey as made by Horney was the testimony of a neighbor who was present a part of the time during the survey; A. D. Barber, who assisted in making the survey, and the plaintiff in error, who claims to have been shown the line by his son some time after the survey was made, all of whom testified the line at the north crossed the big

slough, while the survey as made by Horney, according to his testimony and as shown by his plat and notes, was east of that point. Horney testifies the line as surveyed by him started at the government stone at the common corner of the townships and ran to a stone at the north end of the boundary line between said farms, planted by him, and that the line passed four or five feet on the east side of a large cottonwood tree located between the railroad and the north end of the line; that when he made his re-survey, in 1898, he found all these monuments. In addition to these three monuments by which the line surveyed by Horney was identified by him, plaintiff in error, who erected his fence south of the railroad shortly after the line was surveyed, placed the same upon the line surveyed by Horney.

It is claimed by plaintiff in error that even though the line was run at a variation of six degrees east in 1889, there is no evidence tending to prove any agreement between him and H. R. Dickinson establishing said line as the boundary line between said farms, as he says he never understood the line to be at the place where it is now claimed it was established by the survey made by Horney. The fact that plaintiff in error shortly thereafter built a fence upon this line from the common corner of the townships north to the railroad, to our minds is very strong evidence against such contention; and his explanation that a road was to be laid out along that line and that he set over his fence on his own land far enough to give a part of the road does not strike us with very much force, as the south end of the fence would be in the middle of the road and the north end some distance east of the east side of the road.

George C. Curtis testified that in 1891 or 1892 he was employed by the plaintiff in error to cut the fence row out for him north of the railroad, and that his son, William LaMont, who represented the plaintiff in error at the time the survey was made, showed him where the

line ran; that while he was cutting the fence row out the plaintiff in error came to where he was at work; that he was at that time on the bottom north of the railroad, on a line with the fence which ran south from the railroad, and that the big cottonwood was on the line and that plaintiff in error stated to him the line ran east of the cottonwood. Charles Munson testified that in 1895 or 1896 he was cutting cord-wood for H. R. Dickinson on the bottom north of the railroad; that while he was at work plaintiff in error showed him where the line was and requested him not to cut a certain tree; that the line pointed out to him by the plaintiff in error was east of the cottonwood tree four or five feet, and that the line as now claimed by the plaintiff in error is sixteen or nineteen rods west of where he then claimed it was. William Munson testifies that he was present and heard the conversation between his brother, Charles Munson, and the plaintiff in error, testified to by his brother, and that the line plaintiff in error pointed out to them at that time, and up to which they cut the timber for Dickinson, was on a line with the fence running up the bluff on the opposite side of the railroad. The testimony of Curtis and the two Munsons was denied by plaintiff in error, and there was evidence introduced tending to show that H. R. Dickinson, during his lifetime, had admitted that the boundary line between these two farms was considerably west of the cottonwood tree referred to in the testimony of the witnesses. Owing to the conflict in the testimony we are unable to say that the jury, in passing upon the controverted questions of fact, as they saw the witnesses and heard them testify and were in a much better position to judge of their credibility than we, did not decide them correctly.

It is further contended on behalf of the plaintiff in error that there can be no recovery in this case because the proof does not tend to show that the trespasses complained of were committed on the east half of the south-

east quarter of section 36, township 5, north, range 9, west, the land described in the declaration, as it is said if it be assumed that the agreed line is located east of the line originally established by the government survey, and that the trespasses complained of were committed on the strip of ground between this agreed line and the line originally run by the government, then the trespasses would not be on the land described in the declaration, but on the west ninety acres of the south-west quarter of section 31, township 5, north, range 8,—in other words, that any agreement between the plaintiff in error and H. R. Dickinson as to the boundary line between these lands could not change the geographical description of their respective properties. This contention cannot be sustained. The law is well settled that where the boundary line between two estates is indefinite or unascertained, the owners may, by parol agreement, establish a division line, and the line thus defined will afterwards control their deeds notwithstanding the Statute of Frauds. The principle upon which this conclusion is arrived at is, that the effect of the parol agreement is not to pass real estate from one party to another, but simply to define the boundary line to which their respective deeds extend. (4 Am. & Eng. Ency. of Law,—2d ed.— 860.) In *Yates* v. *Shaw, supra*, it is said (p. 368): "As a general rule, the lines and corners of land established by the government surveys when it was first surveyed, platted and recorded, must control when they can be ascertained and identified. But owing to the wild, unsettled condition of the country at the time, the want of skill and experience of the men employed in many instances, the want of care and attention in others, the imperfection of instruments used, the variation of the needle and the obliterating effects of time, it is in most cases a matter of no small difficulty to ascertain with certainty where such corners and lines were established by the government. Many of the most skillful and experienced

surveyors differ more or less in determining where they were located. Lines and corners that are supposed to be fixed and established by one surveyor are overturned or left in doubt by another at a subsequent period. In all matters of uncertainty and dispute the parties may, without doubt, compromise and end the dispute; and they may as certainly fix, by agreement, the boundary lines separating their lands as other disputes, and when they have thus agreed upon the position of such boundary, and have acted upon it as the true line, they should be estopped from asserting another and different line. * * * And while it may be true that it does not alter or change the original location of such line, still it must be regarded as the true line and the parties concluded from disputing it." And in *Berghoefer* v. *Frazier, supra,* it is said (p. 579): "The principle is well established that the owners of adjoining tracts of land may, by parol agreement, settle and establish permanently a boundary line between their lands, which, when followed by possession according to the line so agreed upon, is binding and conclusive upon them and their grantees. The line is established, not by transfer of title of either to the other, because that can only be done by deed properly executed, but such settlement determines the location of the existing estate of each, and, when followed by possession and occupancy, binds them, not by way of passing title, but as determining the true location of the boundary line between their lands. Having agreed upon the line or agreed upon a mode by which it shall be determined, and having accepted and acquiesced in it by the unequivocal act of taking possession according to the line, they and their privies are estopped from afterwards disputing it."

It is said defendant in error never had possession of the land in question. The evidence tends to show H. R. Dickinson was in possession of this strip; that he had William and Charles Munson fell the trees on the same

and cut them into cord-wood; that after its purchase defendant in error built a fence on the east line of the strip, enclosing it with the remainder of his farm; that this fence had been standing for some time when plaintiff in error crossed over the same and erected a fence on the west side of the tract of land in dispute, destroying the fence erected by defendant in error and otherwise trespassing upon the land of defendant in error.

We find no error in the admission or rejection of evidence by the trial court. The record in the partition proceedings offered in evidence was wholly immaterial as there was no dispute over the ownership of the land, it being conceded that the defendant in error owned the east half of the south-east quarter of section 36 and the plaintiff in error the west ninety acres of the south-west quarter of section 31. The only controverted question was as to the boundary line between said tracts. A sufficient foundation was laid for the introduction of the surveyor's records offered in evidence and the cross-examination of the surveyor was not unduly limited.

Finding no reversible error in this record, the judgment of the circuit court will be affirmed.

*Judgment affirmed.*