**Chicago, Burlington & Quincy Railroad Company, Appellee, v. Margaret Aman, Appellant.**

**Gen. No. 8,027.**

Opinion filed October 8, 1929.

C. E. McNemar, for appellant.

J. C. James and Jack, Irwin & Jack, for appellee.

Mr. Justice Jones delivered the opinion of the court.

In an action of forcible entry and detainer, the Chicago, Burlington and Quincy Railroad Company obtained judgment against Margaret Aman for wrongfully entering and withholding possession of a strip of ground 22 feet wide and 124 feet long, lying directly south of and adjoining the center line of the main track of appellee.

In 1852 the Peoria & Oquaka Railroad Company secured a right of way across the lands of Edward D. Edwards, which includes the strip involved in this suit. The right of way agreement is in writing. It does not fix the width of the right of way but among other things, it provides that, "6th: Said Company agrees that said Edwards may run his fences as near said railroad as may be consistent with the free and convenient use of said railroad. 7th: Said Edwards shall have a right to build as near said railroad as he can without interfering, in any way, with the free use thereof, and the Company will handle his freight."

After the railroad was built, Edwards sold the land to appellant. Appellee claims an easement over the premises and makes no claim to the fee.

Appellant claims that the strip is a part of Lot 6 in the plat of Edwards Station, and that at the time of its purchase she took actual possession of all the property described in her deed, under claim of ownership, subject only to the easement mentioned in the deed from Edwards to the railroad company. The testimony shows that the railroad tracks were on a fill about 8 feet above the level of the ground, running down on a slope of 1½ to 1 foot on the south about 10 or 12 feet. The evidence is somewhat involved, but it shows that for many years there was no fence on the south side of the railroad; that telegraph poles were located the usual distance south of the tracks; and that about 30 years ago there was a driveway between the railroad tracks and the telegraph poles. This driveway was filled in by the owners of a coal mine adjacent to the railroad and west of Lot 6. It was used in hauling coal to railroad cars and for access to the coal mine and the railroad depot. Its use was almost entirely for railroad purposes.

The location of appellee's telegraph poles was the same for at least 29 years. In 1884 a fence was built at the foot of the slope and south of the poles from 20 to 25 feet away from the center of the railroad tracks, approximately on the line which appellee claims is the south boundary of its right of way. The weight of evidence shows that the location of the fence was never changed until 1925 when, shortly before the present suit was instituted, appellant rebuilt it and moved it out within 12 feet of the center of the tracks at the east side of her property and 10.3 feet at the west side. The fence is so close to the ends of the railroad ties that it will interfere with their replacement. It incloses two of the telegraph poles and places them about four or five feet inside appellant's fence. There are

two gates in the fence, one at the side of her lot and one at the front. The cross arms on the telegraph poles extend 5 feet each way from the poles.

Edwards Station is not incorporated. In 1894 the owners of the land south of the railroad caused a plat of their properties to be made and recorded. The plat and the testimony of the surveyor who made it tend to show that the rear of the lot now owned by appellant was along the line of the fence built in 1884. The weight of the evidence is to the effect that the line of that fence was treated by all parties concerned as the boundary line between the railroad right of way and the property on the south ever since the fence was built and until appellant moved it in 1925, a period of more than 40 years. The railroad company cut the weeds twice a year from its tracks to that fence, scalped around the poles, and repaired and replaced its poles and wires as necessity required. Appellant acquiesced in the company's use of the strip, although she now insists that she always claimed the line was located where she placed the fence in 1925.

Where there is a dispute between adjoining owners of land as to the true boundary line, or the line is unascertained, they may establish it by parol agreement and possession in pursuance thereof, and the line so agreed upon will be binding upon them and their privies in estate. (*Clayton v. Feig,* 179 Ill. 534; *Sheets v. Sweeney,* 136 Ill. 336; *La Mont v. Dickinson,* 189 Ill. 628; *Berghoefer v. Frazier,* 150 Ill. 577; *Jones v. Scott,* 314 Ill. 118.) Such an agreement followed by acquiescence therein estops parties to dispute the line. (*Berghoefer v. Frazier, supra; La Mont v. Dickinson, supra.*) An agreement fixing a boundary line need not be shown by direct evidence, but may be inferred from conduct, and especially from long acquiescence. (2 C. J. Boundaries 232.) Such an agreement may be implied from the unequivocal acts and declarations of the parties and acquiescence for a considerable length of

time. (*Clayton v. Feig, supra; Sheets v. Sweeney, supra.*) Such an agreement, either express or implied, is enforceable both at law and in equity, whether the period of limitation has run or not. (*Clayton v. Feig, supra; Bauer v. Gottmanhausen,* 65 Ill. 499.)

The line may be established by way of estoppel, without any agreement, when the parties have had undisturbed possession in conformity thereto for more than 20 years. (*Clayton v. Feig, supra; Fisher v. Bennehoff,* 121 Ill. 426; *Sheets v. Sweeney, supra.*) From the facts shown in evidence, an agreement is to be implied fixing the south boundary of appellee's right of way on the line described in the complaint in this cause. But if no such an agreement be justly implied, the record is sufficient to establish the line through estoppel.

Appellant insists that regardless of the limits of the right of way, she is entitled to the use of the land for any purpose she may deem proper, so long as it does not interfere with the proper enjoyment of the easement by appellee. She claims that the company has been operating its trains over its tracks; that its telegraph lines have been renewed and all necessary repairs have been made; that messages have been sent over said telegraph lines without interruption, and that appellee now has the same use of its right of way that it had before appellant's present fence was built.

An easement of right of way granted to a railroad company is essentially different from any other. The nature of railway service generally requires exclusive occupancy. A railroad company is entitled to an uninterrupted possession of its tracks and all of its right of way necessary for conducting its business, except where built on the public highway or over public crossings. It is immaterial that appellant is willing to allow the servants of appellee to mow grass and weeds from the strip in question or that she is willing to allow the telegraph poles, cross arms, and wires of appellee to

remain in their present location, or that the servants of appellee may enter the strip enclosed at all times to maintain and repair the line. If the free use of the strip is necessary or convenient to the proper maintenance and operation of the company tracks, telegraph lines and business, it is entitled to possession thereof and should not be excluded therefrom or retarded by fences, gates, or other obstructions.

By the terms of the agreement granting the right of way, appellant had no right to place her fence so near such railroad tracks as to interfere with the free and convenient use of the railroad. According to the evidence, the fence does interfere with the free use of that portion of the right of way which is enclosed.

Where as in this case a railroad company has the exclusive right to the enjoyment of an easement, forcible entry and detainer may be maintained. (*Farley v. Bay Shell Road Co.,* 125 Ala. 184, 27 So. 770; 26 C. J. Forcible Entry and Detainer, 833; 11 R. C. L. Forcible Entry and Detainer, sec. 8.)

A large number of instructions were offered by each of the parties. But no error appears in them sufficient to warrant us in reversing the judgment. The instructions given on behalf of appellant substantially present her theory of the case. Several of the instructions tendered on her behalf and refused relate to the question of permissive use of the premises by appellee. No such question was presented by the pleadings or the evidence and it would have been improper to give them. A number of other offered instructions pertain to the question of title to the premises and were properly refused. Appellee claims only an easement or right of way and to the unrestricted use of it for its purposes. The verdict of the jury and the judgment of the court appear to be correct, and the judgment is therefore affirmed.

*Judgment affirmed.*