ROBERT E. KINCAID

*v.*

TYRE S. VICKERS.

*Opinion filed October 24, 1905.*

BOUNDARIES—*when a boundary line cannot be questioned.* A boundary line established by parol agreement by disputing adjoining owners, in accordance with which agreement possession is held for over twenty years, cannot be successfully questioned.

APPEAL from the Circuit Court of Massac county; the Hon. WILLIAM N. BUTLER, Judge, presiding.

Appellant, Robert E. Kincaid, filed his bill against Margarette Anna Kincaid and Tyre S. Vickers in the circuit court of Massac county, in which he sought to partition a strip of land ten rods wide east and west, lying along the boundary line between the north-east quarter and the north-west quarter of fractional section 1, township 19, north, range 6, east, in Massac county. The bill alleges that Robert E. Kincaid and Margarette Anna Kincaid were tenants in common, the former owning one-fourth of the land and the latter three-fourths thereof; that Tyre S. Vickers was in possession, and claimed to hold the open, notorious, adverse, exclusive and continuous possession of the same, un-

der claim of ownership, for over twenty years immediately preceding the filing of the bill, whereas, in fact, the said Vickers had been in possession a much shorter period than twenty years. The prayer was that the claim of title by Vickers be declared null and void and of no avail against the title of Robert E. Kincaid and Margarette Anna Kincaid, and that he be ordered to surrender possession of the premises, and that the same be partitioned. Appellee, Vickers, filed his answer, in which he alleged that he and his grantors had been in the open, adverse, notorious, exclusive and continuous possession of the premises, under claim of ownership, for over forty years immediately preceding the filing of the bill, and that the premises of which he had possession were not the premises described in the bill. The cause was referred to a master, who recommended a decree in accordance with the prayer of the bill. Exceptions were filed to his report, which were sustained by the chancellor and the bill was dismissed for want of equity. From the decree so rendered an appeal has been prosecuted to this court.

CHARLES M. FOUTS, and S. BARTLETT KERR, for appellant.

COURTNEY & HELM, for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The sole question for our determination is one of fact,—that is, whether or not the proof sustains the allegations of the bill. Fractional section 1 is contiguous to the Ohio river. The east line is 20.50 chains long, and is the boundary between Massac and Polk counties. The west line is 29.10 chains long. The north and south half-mile line between the two quarter sections is 24.80 chains long. The northwest quarter of the section contains 111.97 acres and the north-east quarter contains 108.33 acres. Beaver Dam lake enters the section at the north-east corner, and crosses the

north and south half-mile line between the two quarter sections about thirty yards from the north boundary, and passes out of the section a short distance east of the north-west corner, leaving a small tract of land capable of cultivation in both quarter sections. A little over five rods east of the north and south half-mile line between the quarter sections a slough starts from the north bank of Beaver Dam lake, the break in the bank being twenty feet wide and six or seven feet deep, and running in a north-westerly direction into another lake, variously called Kinneman lake, Kincaid lake and Long lake. In 1868 Edmond Allcock, together with his wife, sons and daughters, conveyed, by warranty deed, to his daughter Lucinda Martin, through whom Robert E. and Margarette Anna Kincaid claim title, the whole of the north-east quarter, and she immediately took possession under her deed. At the time of this conveyance Edmond Allcock was the owner of the north-west quarter of the section, together with a strip of land five rods wide immediately east of the north and south half-mile line between the quarter sections. In 1870 Allcock conveyed the north-west quarter to Henry Metcalf, through whom Tyre S. Vickers claims title. In this deed to Metcalf, Allcock also attempted to convey the five-rod strip immediately east of the north and south half-mile line between the two quarter sections which two years before he had conveyed to his daughter Lucinda Martin. James B. Martin acquired the rights and title of his mother, Lucinda Martin, and a dispute arose between him and Metcalf as to the boundary line between the two quarter sections. The county surveyor, a Mr. Hancock, was employed to locate the line. By agreement between the parties the line was located where a former surveyor, named Johnson, had located it, and Metcalf was permitted to take possession of the five-rod strip. A stake was driven at the corner and a line established through Beaver lake to the Ohio river, and Metcalf on the west and Martin on the east for a number of years cultivated to this line as thus established. In 1884 appellee, Tyre S.

Vickers, purchased the north-west quarter of Metcalf, and they went to the north line and measured the distance from the north and south half-mile line east five rods, where the line had previously been established by Metcalf and Martin. In 1902 the land was re-surveyed by William Martin and the line in dispute again located. A few years before the last survey Vickers constructed a wire fence from the south bank of Beaver Dam lake south to the Ohio river, and it is claimed that upon the land being re-surveyed by Martin it was found that this fence was 3.52 chains, or fourteen rods and two links, east of the south half-mile line between the two quarter sections, thus giving Vickers nine rods and two links more land than had previously been agreed upon, and the bill for partition was filed for the purpose of ousting him from the possession of this strip.

It is conceded by appellant that Vickers is entitled to the strip five rods wide lying immediately east of the half-mile line, and the question for determination therefore is whether or not he has within the last twenty years moved his fence east nine rods and two links. Appellant acquired title to the one-fourth interest which he claims in the strip in dispute by virtue of a deed executed to him by his mother, Margarette Anna Kincaid, just prior to the filing of the bill.

In the case of *Clayton* v. *Feig,* 179 Ill. 541, we held that where there is a dispute between adjoining owners of land as to the true boundary line, they may establish it, first, by parol agreement and possession in pursuance thereof, and the line so agreed upon will be binding upon them; second, an agreement may be implied from the unequivocal acts and declarations of the parties and acquiescence for a considerable length of time; third, that such an agreement, either express or implied, is enforceable both at law and in equity, whether the period of limitation has run or not; fourth, the line may be ascertained by way of estoppel, without any agreement, when the parties have had undisputed possession in conformity thereto for more than twenty years. It there-

fore became a question of fact as to the manner in which this boundary line was established, if at all, and how long it has continued at the place it is now located.

James B. Martin, the grantor of the Kincaids, testified that a dispute arose between his mother and Metcalf after the survey by Hancock, and they agreed to let the old line be the line between them; that after the death of his mother, when he became the owner of the land, William Fritts showed him where Johnson had located the line, and that he (Fritts) and Metcalf measured five rods east from the corner, and it brought them in line with the old turn-row; that he and Metcalf then and there agreed that this line, which they staked out in the old turn-row, should be the boundary line between their properties; that he knows where Vickers' fence is now located, and that the line which he and Metcalf agreed upon is six or eight feet east of Vickers' fence; that this fence is located, and has been considered the boundary line between the owners from 1864 to the present time, and that all of the owners from 1864 to the present time have cultivated and have had possession on their respective sides up to the line where Vickers' fence now stands.

Appellee, Vickers, testified that when he bought the farm from Metcalf they went to the north-east corner of the north-west quarter, where Johnson had located the corner, and cut a pole sixteen and a half feet long and measured off five rods, and it brought them.to this fence, or a little over the fence, and that he knew this boundary to have been in the same place where his fence is now located for five years before he bought it, and that he has had actual possession, under claim of title, up to this line. where his fence is now located since 1884, and his grantor, Metcalf, had possession up to the same line five years prior thereto.

Joe Anderson, who was reared on the farm in question, testified that he knew this to be the boundary line for at least forty-five years; that he had never lived farther than six miles from the premises and he had been on the same

many times each year; that the line indicated by the fence, as it is now located, has been considered the boundary line between the two farms by the respective owners thereof for forty-five years.

David Arnold testified that he cultivated this land some thirty-two or thirty-three years ago and knew where the fence now is, and could see no difference between the location where it now is and had been for at least thirty-two or thirty-three years; that the fence formerly on the line was a worm or rail fence, and there was a cottonwood tree and a pecan tree right along on the turning-row in the line of the fence, and that a sycamore stood over next to the river along the same line where the fence was. There is evidence also tending to show that the wire fence built by Vickers had been nailed to these cottonwood and pecan trees, and had since broken loose from one of them.

William D. Lynn testified that he had known the land for fifty years, and the fence as now located on the old turn-row has been the boundary line between the premises.

There is very little, if any, testimony in the record disputing the foregoing evidence as to the location of the fence for the time stated by the witnesses, and we are of the opinion that the preponderance of the evidence satisfactorily shows that the division line between the two pieces of land was established by the respective owners by agreement; that it has been accepted for more than twenty years at its present location, and any right which appellant or his grantors had in the strip in dispute has long since been barred by the Statute of Limitations. Therefore the decree of the circuit court was correct and the bill for partition was properly dismissed, and the decree will be affirmed.

*Decree affirmed.*