BENEDICT B. ALT ET AL. v. EMMA BUTZ ET AL.

Submitted December 1, 1910—Decided May 19, 1911.

1. The doctrine of practical location regarding boundary lines is equitable in its nature, and applies only where some disagreement or uncertainty exists between adjoining owners as to the true line, which results in their agreement or acquiescence upon a boundary line, which, under the doctrine of estoppel *in pais*, cannot subsequently be controverted without working a fraud.
2. Where the true boundary line is understood and conceded, and the adjoining owners are not in dispute concerning it, mere permission by one to the other to build up to an existing building considerably over the line is not in legal effect a practical location of the boundary, nor can it, under the statute of frauds, operate as a conveyance of the land in controversy.

On rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices TRENCHARD and MINTURN.

For the plaintiff, *Collins & Corbin.*

For the defendant, *James A. Gordon.*

The opinion of the court was delivered by

MINTURN, J. The plaintiff brought ejectment to recover a strip of land along the dividing line separating the property of the plaintiff from that of the defendant. The paper title disclosed the ownership of a part of this strip at least in the plaintiff. The defendant asserted title to it under a claim of adverse possession, and the trial court left it to the jury to determine whether the claim was substantiated by the proof in the case. The jury found against the claim as to a certain portion of the property which they described in their verdict.

The only cause urged for reversal upon this rule is that the trial court took from the jury the consideration of the question of a practical location of the dividing line by the parties, holding that the question should be eliminated from their consideration.

The defendant's witness Malbeck made his survey for the defendant in 1893, and then found that an existing building of the defendant, being an old stable, encroached on the plaintiff's lot. The witness then suggested to Mr. Alt and Mr. Butz that the new building which the latter proposed to erect be placed against the existing building of Alt. This, he says, "was agreed, and everything was lovely," and this situation, it is claimed by defendant, presented evidence of a practical location of the line for the jury to consider.

We do not so consider it, and we think the trial court was correct in its ruling. The testimony does not present a situation at the time of this survey where the actual location of the correct line between the parties was in dispute. There was no contention between the parties upon the subject, for both plaintiff and defendant were aware of the fact that the old building was over the line, and no dispute existed concerning the fact. The consent of the plaintiff that the new building might also be erected across the line did not create an agreement between the parties for the substitution of a new boundary line for the old, so as to convey to the defendant a title to the land so occupied. As an agreement to con-

vey lands it militates against the provisions of the statute of frauds. *Ivins* v. *Ackerson,* 9 *Vroom* 220.

While as a consent to a practical location it lacks the essential prerequisite of a disagreement between the parties as to the correct line, or an uncertainty as to the existence of the true location of the dividing line, some or all of which elements are found to be *ratio decidendi* in the cases where the doctrine has been applied so as to prevent in practical effect the working of a fraud. 16 *Cyc.* 784.

In legal theory the doctrine of a practical location is equitable in its nature, arising from the principle of estoppel *in pais,* the fundamental conception of which is the doing of an act by a party in interest, or his acquiescence in the doing of an act by another which would naturally lead to the inference of the existence of a *status* or the establishment of a condition upon which either party in interest may act to his prejudice if the act be disavowed. It is used to preclude a party from maintaining by evidence that which he had before expressly or tacitly denied; or disproving that which he had before expressly or tacitly admitted, when the other party has acted upon the faith of the admission or denial in such a manner that he will be injured unless the same is held conclusive. *Shapley* v. *Abbott,* 42 *N. Y.* 443.

The doctrine is applied, both in law and in equity, to prevent the commission of an act which in its consequences would work a fraud. *St. Paul and D. R. R.* v. *Blackmar,* 44 *Minn.* 514.

Applied to the doctrine of practical location in the absence of the statutory period of adverse possession regarding boundary lines, it presupposes a dispute or an uncertainty between adjoining owners regarding the true line, and a mutual concession, or acquiescence in a practical location of the line, as a *modus vivendi,* which the parties in interest cannot thereafter be heard to controvert.

Thus, in *Den* v. *Van Houten,* 2 *Zab.* 61, the doctrine enunciated by Chief Justice Green that where a line is not settled, acquiescence by the parties concerned, without a positive agreement, for a less period than twenty years will fix the

boundary, is based upon the essential prerequisite of the uncertainty of the boundary line. The same theory is presented in the later case of *Jackson* v. *Perrine*, 6 *Vroom* 137, where Mr. Justice Depue enunciated the rule to be that "in all cases where the language of a deed is of doubtful construction as to the boundaries, the construction given to it by the parties themselves, as shown by their acts and admissions, is deemed to be the true one, unless the contrary is clearly shown."

So, it has been held in Massachusetts, that where the parties in locating a line merely agree to put a fence or building on a certain line, without any reference to where the actual boundary is, or if the fence or building was located otherwise than on the true line, through mistake, no estoppel arises, and either party may claim to the true line when it is discovered. *Proctor* v. *Machine Company*, 137 *Mass.* 159; *Proprietors* v. *Prescott*, 7 *Allen* 494; *Thayer* v. *Bacon*, 3 *Id.* 163.

Adjudications of similar import are to be found in *Gray* v. *Kelley*, 190 *Mass.* 184; *Katz* v. *Kaiser*, 154 *N. Y.* 294, and *St. Bede College* v. *Weber*, 168 *Ill.* 324.

No dispute or contention existed between the parties in the case at bar as to the location of the true line. It was apparently conceded by the defendant before he attempted to build, and his act therefore cannot be said to be influenced in legal effect so as to work an estoppel *in pais* by any legal concession by the plaintiffs of their rights in the premises.

Exception is taken to the form of the verdict, *i. e.*, "we find for the plaintiffs and make the line run tapering from nothing to three and one-half inches," upon the ground that it is too indefinite. It may be characterized as somewhat indefinite, but we are referred to no authority which would lead us to conclude that it is so indefinite as to be valueless, and, in any event, its meaning seems to us to be sufficiently plain and conclusive for the practical purposes of this litigation.

The rule to show cause will be discharged.