(No. 23915.—

Ludmil Kandlik et al. Appellees, vs. Anton Hudek et al. Appellants.

*Opinion filed December 10, 1936—Rehearing denied Feb. 9, 1937.*

Stone, J., specially concurring.

Andrew E. Dianis, Arthur G. Waite, Floyd E. Eckert, and Okel S. Fuqua, for appellants.

George L. Kandlik, and George W. Field, for appellees.

Mr. Chief Justice Herrick delivered the opinion of the court:

On May 4, 1925, the complainants, Ludmil Kandlik and George B. Archer, filed their bill in the circuit court of Lake county making defendants thereto Anton Hudek and

his wife, Louise Hudek, and others. The relief sought was that (1) the court determine and locate the boundary line between certain lands owned by Hudek and lands owned by Archer; (2) establish and locate a right of way over and across the Hudek premises for the use of Kandlik; (3) the Hudeks be restrained from interfering with Archer and Kandlik in the occupation of the respective premises severally owned by them; and (4) from interfering with the passage by Kandlik over his easement on the Hudek property.

The bill alleged that the complainants were respectively the owners in fee and in possession of two adjoining tracts of land in the southwest quarter of section 9, township 43 north, range 9 east of the third principal meridian, in Lake county; that the Hudeks owned premises adjoining those of Archer and claimed to own some portion of the Archer property; that they had threatened to injure, and had injured, the premises claimed by the complainants; that Kandlik has a right of way across the Hudek premises, but the Hudeks had refused to permit Kandlik to cross any portion of their premises for the purpose of ingress to and egress from his premises; had forcibly ejected him from his right of way, had assaulted him while he was endeavoring to reach his premises by means of his right of passage, and had threatened to injure his property. The Hudeks answered. The special master found for the complainants. The trial court confirmed the master's report after sustaining the complainants' exceptions to some of the findings and entered a decree granting the relief prayed. The Hudeks have appealed.

The question involved in the litigation arises over the construction of descriptions used in the deeds under which the parties acquired title to their respective premises. On July 11, 1848, Stanton M. Thomas and LaFayette Thomas were the owners of the west half of the southwest quarter of section 9. LaFayette Thomas was the owner of the west

fraction of the southwest quarter of section 9, (being all that portion of the east half of the southwest quarter lying west of the Fox river). On that day Stanton M. Thomas conveyed to LaFayette Thomas his equal undivided one-half of the south part of the premises last mentioned by the following description: Commencing at a post on the southwest corner of said section 9, thence north two degrees east 21.98 chains to a post, thence north 89½ degrees east 39.82 chains to a post on the west bank of Fox river, thence with said river down-stream 27.20 chains to a post on the south side of said section 9, thence south 89½ degrees west 24.67 chains to the place of beginning, containing 70.53 acres more or less, which tract is hereinafter referred to as tract A. On the same day Stanton M. and LaFayette Thomas conveyed to Eli Henderson the north part of the west portion of the southwest quarter of section 9 by the following description: Beginning at the quarter post on the west side of said section 9. at the northwest corner of the southwest quarter of section 9, thence south 87 degrees east 41 chains to a post in the center of said section, thence south two degrees west 7 chains to a post on the west bank of Fox river, thence with said river down-stream 8.90 chains to a post, thence south 89½ degrees west 39.82 chains to a post on section line, thence north two degrees east 18.44 chains to the place of beginning containing 70.53 acres more or less, which tract is hereinafter referred to as tract B.

It will be noted that by the descriptions in these two deeds Stanton M. and LaFayette Thomas divided that part of the southwest quarter of section 9 west of the Fox river into two parts of an equal area of 70.53 acres, the south part herein referred to as tract A and the north part as tract B; that measuring on the west line of the southwest quarter (tract A), that line under the voluntary division extended north 21.98 chains, and tract B, on the same line, extended south 18.44 chains in order to create a division line east and west through the southwest quarter, with the

acreage west of the Fox river in the southwest quarter north of such line equal to the acreage south of such line. Such division line was approximately 1.98 chains north of the government survey line dividing the north half from the south half of such quarter-section. A division fence was erected and had been maintained on such voluntary division line between tracts A and B for at least fifty years prior to the filing of the bill. That fence was still standing when the bill was filed.

On February 2, 1906, Mina Rohrhof by a connected chain of conveyances acquired title to tract B by the description of the north half of the southwest fractional quarter of section 9. During all the time from July 11, 1848, to February 2, 1906, tract B was transferred by *mesne* conveyances under such last mentioned description although during that same period the different owners occupied tract B and no other part of the southwest quarter. On February 8, 1906, Mina Rohrhof conveyed to Charles F. Busch all her interest in the premises stated in her deed to be a parcel of land in the north half of the fractional southwest quarter of section 9, described as follows: Beginning at a point on the west bank of Fox river at the southeast corner of that portion of the said north half of the southwest fractional quarter which lies west of the Fox river, running thence northerly along the river bank 100 feet, thence due west 400 feet, thence southwesterly and parallel with the Fox river to the south line of said north half of the southwest fractional quarter, thence east along said south line 400 feet to the place of beginning.

On March 8, 1906, Mina Rohrhof entered into a contract in writing with Busch, which was recorded the following day, setting forth, among other things, that she had purchased of Busch certain premises in sections 9 and 10 and had deeded back to Busch a strip of land along the Fox river 100 feet by 400 feet in the north half of the southwest fractional quarter of section 9, and therein further

agreed with Busch that he "shall have a right of way or easement over all the N½ of the SW¼ of said section 9 or over any of the adjoining land designated and owned by the first parties for the purpose of giving said Busch free access to the road from said strip deeded back to him."

On May 28, 1923, complainant Kandlik acquired title by quit-claim deed from Busch and his wife to the premises described as follows: Beginning at a point on the west bank of Fox river at the southeast corner of that portion of the N½ of the southwest fractional quarter which lies west of the Fox river, running thence northerly along the river bank 100 feet more or less to a point 100 feet north and parallel to the south line, thence due west parallel with the south line 400 feet, thence southwesterly and parallel with said river bank to the south line of said north half of the southwest fractional quarter, thence east along said south line 400 feet to the place of beginning, also known as the south 100 feet of the easterly 400 feet west of river of the south 2.35 chains of north 18.44 chains of the northeast quarter of the SW¼ of section 9 and lying and being north of the south 21.98 chains of the southwest fractional quarter of said section 9 together with an easement or right of way over all the N½ of the SW¼ of fractional quarter section 9 aforesaid. Kandlik has ever since his purchase of the last named premises been in possession thereof.

On February 20, 1906, Mina Rohrhof conveyed tract B to Charles A. Brillow, who in turn transferred it to Ella G. Cloakley on October 11, 1906. On January 19, 1907, Ella G. Cloakley conveyed to Andrew Spetz premises described in the deed as the N½ of the NE¼ of the SW¼ and the north three-quarters of the S½ of the NE¼ of the SW¼ of section 9. On July 25, 1907, Spetz conveyed the premises as last described to the Congregation of the Resurrection, who on December 11, 1922, conveyed an undivided one-half thereof to Joseph Hudek and Anna, his wife, and an undivided one-half thereof to Anton Hudek and Louise,

his wife. The defendants, Anton and Louise Hudek, have since obtained the interest of Joseph Hudek and Anna in the premises. On June 25, 1917, Ella G. Cloakley conveyed to the complainant Archer the premises described in the deed as the S¼ of the S½ of the NE¼ of the SW¼ of section 9, containing about three acres, except 100 feet by 400 feet.

The decree found that all conveyances of land in the N½ of the southwest fractional quarter of section 9 (tract B) were intended to, and did, pass title to land north of the division fence. No conveyances were ever contemplated by either grantor or grantee of any land south of such division fence, the land south of such division fence (tract A) being still the property of, and since November 15, 1848, in possession of, LaFayette Thomas, his heirs, devisees and assigns. The decree further found that Kandlik was the owner in fee of the 100 by 400-foot tract claimed by him and by a metes and bounds description thereof fixed the south boundary line of his premises on the so-called voluntary division line on which the fence was maintained as stated above, and further found him to be the owner of the easement of a right of way over the Hudek lands as described in the Rohrhof-Busch agreement. The decree then found Archer to be the owner of the premises claimed by him and fixed its southernmost boundary at the line of the division fence. The court by the terms of the decree expressly reserved the right to enter a supplementary decree locating and determining the right of way or to appoint commissioners for that purpose.

The sole question to be settled by this litigation is whether the descriptions in the deeds under which the Hudeks, Archer and Kandlik acquired title to the respective premises claimed by each shall be treated as referring to subdivisions established by government survey or as restricted by the line created by the so-called voluntary division arising out of the Thomas deeds of 1848.

In our opinion the evidence clearly and overwhelmingly sustains the findings in the decree of the trial court, in substance, (1) that the fence located on the line extending east and west dividing that portion of the southwest quarter of section 9 lying west of the Fox river into two tracts of equal area as established by the Thomas deeds of 1848, has been so located and maintained on that line for more than twenty years prior to the filing of the bill; (2) that such division line on the boundary between the two tracts of equal area north and south of such line (hereinabove referred to as tracts B and A) had been uniformly recognized and treated by the owners of such tracts as the division line since 1848; (3) that the premises comprising that part of the southwest quarter lying north of such division line had ever since 1848, in the various conveyances affecting the same, been described as the north half of the southwest quarter of section 9, or some designated portion thereof; and (4) that the various owners of the premises north of such division line, although taking title thereto by the description of north half of the southwest quarter, or some portion thereof, had nevertheless never asserted any title to or been in possession of any portion of the southwest quarter lying south of such division line.

The uncontradicted evidence shows that in 1921 Kandlik obtained a contract for his purchase of the tract claimed by him; that previous to the time the Hudeks closed the purchase of the tracts claimed by them, Hudek and three others called on Kandlik stating there was a mistake in the survey of the property involved in this suit; that the land bought by Kandlik was south of the division fence. Kandlik on that occasion exhibited his contract and stated, in substance, he claimed to own his premises as above described. He was asked what he would take for his interest. It is therefore clear that Hudek took his conveyance with actual prior notice of Kandlik's claim.

The argument of the appellants here is directed principally to the proposition that since the descriptions of the various premises involved here in terms refer to subdivisions of the government survey, there can be no ambiguity therein, therefore nothing for the court to construe, and that parol testimony is not admissible for the purpose of showing the interest of the parties. The cases cited in support thereof do not sustain their position. It is well settled that parol evidence may be received to locate boundary lines; ·(*Duggan* v. *Uppendahl,* 197 Ill. 179; *Mullaney* v. *Duffy,* 145 id. 559; *Roberts* v. *Birks,* 223 id. 291;) that the location of the division line between adjoining premises is a question of fact. (*Duggan* v. *Uppendahl, supra; Kincaid* v. *Vickers,* 217 Ill. 423.) Boundary lines may be fixed by parol agreement or by acquiescence when supported by possession in harmony with such agreement. (*Berghoefer* v. *Frazier,* 150 Ill. 577.) Such agreement, when followed by possession, ·is binding and conclusive upon the parties, their grantees or heirs. (*Cutler* v. *Callison,* 72 Ill. 113.) The adoption of a division line between the owners of adjoining lands may be implied from their acts and declarations and by acquiescence in respect thereto. After the recognition of such division line as the true boundary for the statutory period of limitation, the parties and their privies are estopped from asserting that it is not the true line. (*Fisher* v. *Bennehoff,* 121 Ill. 426; *Sheets* v. *Sweeney,* 136 id. 336.) The division fence in question having been established, maintained, recognized and acquiesced in as the boundary line for more than twenty years the appellants are precluded from denying that it is the correct line. It follows that the descriptions in the Hudek deed referred to the fractional portions therein designated, not of premises embraced in the government survey but as limited and restricted to those premises lying north of the division fence. The same is true of the descriptions in the Archer and Kandlik conveyances.

We have carefully examined the other errors urged, but we deem them sufficiently answered by what we have already said.

The decree of the circuit court of Lake county was correct and is affirmed.

*Decree affirmed.*

Mr. JUSTICE STONE, specially concurring:

I concur in the conclusion reached in this opinion but not in certain rules of property announced therein. It is because such are rules of property and because, in my opinion, they are incorrectly stated, that I concur specially. In the opinion of the court it is said, "Boundary lines may be fixed by parol agreement or by acquiescence when supported by possession in harmony with such agreement." The opinion cites *Berghoefer* v. *Frazier*, 150 Ill. 577. This statement of the rule is, in my opinion, too broad to be considered accurate. The rule recognized in this State since the very early case of *Crowell* v. *Maughs*, 2 Gil. 419, is there stated as follows: "It is a familiar doctrine of law, that title to real estate cannot be transferred by parol. * * * It is settled, however, that proprietors of adjoining tracts of land may, by a parol agreement, settle a disputed boundary line between them. Such an adjustment of the boundary, if followed by corresponding possession, may be binding on the parties, not because it passes title, but because it determines the location where the estate of each is supposed to exist.—*Jackson* v. *Dysling*, 2 Caines, 198; *Kip* v. *Norton*, 12 Wend. 127."

In *Yates* v. *Shaw*, 24 Ill. 368, the rule is stated as follows: "In all matters of uncertainty and dispute, the parties may, without doubt, compromise and end the dispute. And they may as certainly fix by agreement, the boundary lines separating their lands, as other disputes. And when they have thus agreed upon the position of such boundary, and acted upon it as a true line, they should be estopped from asserting another and different line."

This rule was again followed in *Bauer* v. *Gottman-hausen,* 65 Ill. 499, where the boundary line was in dispute and uncertain and was fixed by parol agreement. Again in *Cutler* v. *Callison,* 72 Ill. 113, there was a dispute as to the boundary line, and it was settled by one party paying the other $25 to leave the fence where it stood as the dividing line. It is again stated in *Duggan* v. *Uppendahl,* 197 Ill. 179, that lines may be established by parol agreement where there is a dispute or uncertainty as to the true line. In *Fisher* v. *Bennehoff,* 121 Ill. 426, there was a dispute as to the correct line, and the same was settled by parol agreement and possession thereunder. In 69 A. L. R. page 1433-note, the rule is again stated, and cases from thirty-nine States of the Union and Federal and Canadian courts of review are there collected. There is no exception in the universality of the adoption of this rule.

That the rule applies only when there is a dispute or uncertainty as to the correct line, has been many times stated by this and other courts. In *Grubbs* v. *Boone,* 201 Ill. 98, it was held that "the rule as to the establishment of a disputed or unascertained line between lands of adjoining owners by verbal agreement and possession in accordance with such agreement, has no application" to an agreement there shown to involve no such dispute or uncertainty as to the true line. In *Sonnemann* v. *Mertz,* 221 Ill. 362, it is held that if the location of the true boundary line is known to the owners, they cannot transfer the land to one another by agreement changing such location, and the rule relating to parol agreement does not apply. It is said in *Purtle* v. *Bell,* 225 Ill. 523, "But this rule [relating to establishing a line by parol agreement] only applies where there is a dispute as to the line or the line is unascertained." In *Marks* v. *Madsen,* 261 Ill. 51, it is again held that this rule applies only under two conditions, first, when the line is in dispute, and, second, where it has not been ascer-

tained, and in either case, the agreement is for the purpose of establishing the disputed or unascertained land. In *Jones* v. *Scott*, 314 Ill. 118, where the matter was presented on able briefs, it was held essential to establish boundary by parol agreement in the absence of adverse possession, that there be a dispute or uncertainty as to the line. I know of no case in this State supporting a contrary view.

In the following cases, a dispute or uncertainty as to the line is held to be a requisite of the rule: *Wood* v. *Lafayette*, 46 N. Y. 484; *Litel* v. *First National Bank*, 196 Wis. 625, 220 N. W. 651; *Bartlett* v. *Young*, 63 N. H. 265; *Alt* v. *Butz*, 81 N. J. L. 156, 79 Atl. 881; *Hanlon* v. *Ten Hove*, 235 Mich. 227, 209 N. W. 169; *Barnes* v. *Allison*, 166 Mo. 96, 65 S. W. 781; *Peterson* v. *Hollis*, 90 Kan. 655, 136 Pac. 258; *Brock* v. *Muse*, 232 Ky. 293, 22 S. W. (2d) 1034; *Kyle* v. *Clink Scales*, 22 S. W. (2d) (Tex. Civ. App.) 729; *High Gravity Oil Co.* v. *S. W. Petroleum Co.* 290 Fed. C. C. A. 6, 370.

The opinion in *Berghoefer* v. *Frazier*, 150 Ill. 577, cited in this opinion as authority for the broad statement that division lines may be fixed by parol agreement or by acquiscence when supported by possession in harmony therewith, does not disclose whether, in that case, the agreement was in settlement of a dispute or to fix an uncertain boundary line. All of the cases relied on in that opinion as supporting that broad statement of the proposition will be seen, upon examination—where the fact as to the existence of dispute or uncertainty appears—to disclose that there was such a dispute or uncertainty. That case has not been cited in any later case as supporting the broad proposition laid down in this opinion.

It may be further observed that in this case, as the opinion discloses, the division line was established by deeds between Stanley M. and LaFayette Thomas, and a division fence was erected and thereafter maintained on the line established by those deeds, and so remained until the filing

of the bill herein. It would seem, therefore, that this is not a case calling for the announcement of the rule with reference to the establishment of division lines by parol agreement.