(No. 33590.—

HARRY GINTHER *et al.,* Appellees, *vs.* GLEN B. DUGINGER, Appellant.

*Opinion filed September 23, 1955.*

HARRIS & HARRIS, of Lincoln, (HOMER B. HARRIS, SR., THOMAS M. HARRIS, and HOMER B. HARRIS, JR., of counsel,) for appellant.

HEYL, ROYSTER & VOELKER, of Peoria, (CLARENCE W. HEYL, and LYLE W. ALLEN, of counsel,) for appellees.

476

Mr. JUSTICE MAXWELL delivered the opinion of the court:

Plaintiffs filed their complaint in the circuit court of Mason County (1) to fix, determine and establish the boundary line between the lands owned by plaintiffs and lands owned by defendant; (2) to perpetually enjoin and restrain the defendant and his successor or successors in title from obstructing or interfering with the lawful use and enjoyment by the plaintiffs of their premises, and especially of a lane used for ingress and egress from residence and farm buildings to the public road lying west of their farm; (3) to quiet title in them in the premises described; (4) to perpetually enjoin and restrain the defendant and his successors in title from obstructing or interfering with the lawful use and enjoyment of a lane or roadway of plaintiffs established and used by them for more than twenty years prior to the time of filing of the complaint; and (5) praying that defendant be required, following the fixing of the boundary line between the premises of plaintiffs and defendants, to construct and maintain a division line fence in accordance with the statute of the State of Illinois pertaining to division line fences.

Defendant filed a motion to dismiss the complaint and, in support thereof, made an affidavit that, prior to the commencement of this suit, an action in ejectment had been and was pending in the same court between the same parties involving the same transaction, controversy and real estate and that, until the ejectment action was tried, it constituted "another action pending between the same parties for the same cause" as provided in subparagraph (d) of section 48 of the Civil Practice Act. (Ill. Rev. Stat. 1953, chap. 110, par. 172.) A hearing was had and the trial court denied the motion.

Thereupon, defendant filed a motion to stay further proceedings or in the alternative to dismiss the complaint. Defendant set forth in said motion in support of the stay

of proceedings the same general allegations as contained in the prior motion to dismiss the complaint and requested that plaintiffs' instant action be deferred and all proceedings thereon stayed. In support of the alternate motion to dismiss the complaint, defendant averred plaintiffs had an adequate remedy as to those things set forth in their complaint by way of defense or counterclaim in the law action of ejectment then pending and that since legal titles only were involved and pending adjudication in a court of law, a court of equity could not take jurisdiction to try these same titles and thereby divest said court of law of its original jurisdiction in such matter. The motion was denied and defendant was ruled to answer.

Answer of defendant was later filed and included therein, as an affirmative defense, the matters which were set forth in his several motions. To this answer, plaintiffs filed their replication denying certain affirmative allegations in the answer, admitting the pending ejectment proceeding but denying the action in ejectment involved the same transaction, controversy and real estate as that involved in the quiet title action and further denied that the ejectment action constituted another action pending between the same parties for the same cause as provided in subparagraph (d) of section 48 of the Civil Practice Act. Plaintiffs further denied the quiet title action should be stayed pending the outcome and disposition of the ejectment action and denied the issues involved in the ejectment proceedings and quiet title action were the same.

The cause was referred by the trial court to a special master in chancery. While there pending, plaintiffs filed an amendment to the complaint. Hearing before the special master in chancery followed.

Upon the trial of the case before the special master, the latter found in favor of plaintiffs and recommended to the trial court the granting of the relief prayed for in the complaint, as amended.

Objections, which now stand as exceptions, were filed by defendant to the special master in chancery's report. The trial court sustained the special master's report and entered a final decree granting the relief prayed for in the complaint as amended, and it is from this final decree that defendant appeals.

A freehold is directly involved and the appeal comes to this court.

Defendant has assigned many errors relied upon for reversal but only some have been argued. It will be considered that those not argued have been waived.

In his first point defendant contends the trial court erred in overruling defendant's motion to stay further proceedings or in the alternative to dismiss the complaint and in overruling the objections to the report of the special master in chancery which raised the same issue, for the reason that plaintiff had an adequate remedy at law and there was a law action in ejectment pending at the commencement of the quiet title action. Defendant divided this point into two sections: In the first he asserts that where an action at law to establish a legal title is pending, a party in possession cannot resort to equity for removal of a cloud from his title, unless there are defenses unavailable at law or unless there is some equitable circumstance in the case of which one of the parties cannot avail himself.

Prior to 1935, section 19 of the Ejectment Act (Cahill's Stat. 1933, chap. 45, par. 19,) provided that the defendant to an ejectment action could demur to the declaration as in personal actions or plead the general issue, under which defendant might introduce in evidence any matter that would tend to defeat the plaintiff's action, except as otherwise provided by the Ejectment Act. Under this provision it was held that estoppel *in pais* was not available as a defense to an action of ejectment. (*Metzger* v. *Horn*, 312 Ill. 173; *Wakefield* v. *VanTassell*, 202 Ill. 41; *Wright* v. *Stice*, 173 Ill. 571; *Winslow* v. *Cooper*, 104 Ill. 235.)

Section 10 of the Ejectment Act, as amended in 1935, (Ill. Rev. Stat. 1935, chap. 45, par. 10,) provides that rules of pleading and practice in other civil cases shall apply to ejectment so far as they are applicable and except as otherwise provided by the act. Section 19 of the act was amended permitting a defendant to file a motion as in ordinary civil cases and to answer by way of general or specific denial or by affirmative defense. (Ill. Rev. Stat. 1935, chap. 45, par. 19.) These provisions permit a defendant to plead equitable defenses to an ejectment action to the same extent that he might plead such defenses to other civil actions under the Civil Practice Act. *Horner* v. *Jamieson,* 394 Ill. 222; *Firke* v. *McClure,* 389 Ill. 543.

That the two causes of action are essentially different would seem obvious upon bare inspection. The wrongs complained of and the redress sought are in no respect alike. The gravamen of the ejectment action is the wrongful entry and ouster; that of the quiet title is a slander of plaintiff's title. Testimony in support of one would not support the other except so far as title might become the subject of inquiry in the ejectment suit which might or might not occur. Moreover the objects of the two actions are entirely different, notwithstanding the main point in dispute may be the same; one attainable in a court of law and the other in a court of equity.

These obvious distinctions between the two cases do not seem to be denied by counsel for defendant; but it is claimed that under our system of practice, plaintiffs herein could have obtained in the ejectment suit all that they seek in the quiet title suit; that they ought, therefore, to have brought forth, in their pleadings in that case, the matters contained in their complaint in this, under penalty of sacrificing all their rights in the premises. Conceding that they might have adopted that course, yet they did not, and we know of no rule of law making it obligatory. Doubtless they were bound to bring forward in the ejectment action

all matters of a strictly defensive character which then existed in their favor, or be thereafter precluded; but this cannot be said of other matters constituting a cause of action in their favor. Although under our Civil Practice Act a defendant may set out new matter in his answer constituting a counterclaim and may have any affirmative relief to which he may be entitled, he is not compelled to do so. Such a rule might become most mischievous in its results, for he might be wholly unprepared to make out his case for the want of testimony which at another time might be at his command. But it is a sufficient answer to this point to say that although the statute provides that a defendant may set out a cause of action in his favor and obtain affirmative relief, it nowhere provides that he must do so under penalty of forfeiture of his claim, and he may therefore do it or not at his option.

In the second section of his first point defendant further contends that equity will not assume jurisdiction in suits to quiet title ostensibly to prevent a multiplicity of actions where the parties are not numerous, or where undetermined actions at law involving a disputed right are pending and a defense, valid, effectual and complete at law remains unestablished. The question was not raised in the trial court and need not be considered here.

Defendant avers that plaintiffs have an adequate remedy at law and these plaintiffs could urge as defenses in the ejectment action all of the allegations upon which they base their claim to relief in this action. However, the only relief they could obtain in the ejectment action would be a negative one—judgment dismissing the complaint and whatever force such judgment would have as an estoppel. If the plaintiffs' contentions are right and they are entitled to recover at all in this action, they are entitled to more comprehensive and adequate relief than that which could be afforded in the ejectment action. They would be entitled to affirmative relief in fixing, determining and estab-

lishing the boundary line between the lands of plaintiffs and defendant, to an injunction to restrain defendant from obstructing or interfering with plaintiffs' use of certain lands, and to a decree quieting plaintiffs' title to the property. For this relief there is no adequate remedy at law. It is well settled that under such circumstances an action in equity will lie notwithstanding the pendency of an action at law.

Both parties rely upon and have cited numerous decisions wherein this court has considered boundary disputes in the nature of the present action. We have held that where a boundary line between two estates is indefinite or unascertained, the owners may, by parol agreement, establish a division line, and the line thus defined will afterwards control their deeds notwithstanding the Statute of Frauds. (*Horn* v. *Thompson,* 389 Ill. 176; *LaMont* v. *Dickinson,* 189 Ill. 628.) The principle upon which this conclusion is reached is that the effect of the parol agreement is not to pass real estate from one party to another but simply to define the boundary line to which their respective deeds extend.

Where the boundary line is unascertained or in dispute, we have held that it may be established, first, by parol agreement and possession; second, by an agreement implied from unequivocal acts and declarations of the parties and acquiescence for a considerable period of time; and third, in the absence of any agreement, by undisturbed possession for more than twenty years. *Cienki* v. *Rusnak,* 398 Ill. 77; *Purtle* v. *Bell,* 225 Ill. 523; *Clayton* v. *Feig,* 179 Ill. 534.

The question of the establishment of a boundary line between the property of adjoining land owners and the effect of such line after it is established has been the subject of much discussion. While there is some conflict in the decisions, the rule applicable to such cases is well established, and the conflict arises from questions of fact arising in the different cases and the application of the law thereto.

As stated above, where there is a dispute between adjoining land owners as to the true boundary line between their respective lands or if the line between them is unascertained, the agreement to establish a line, when so in dispute or unascertained, may be implied from the unequivocal acts and declarations of the parties, either expressed or implied, and such an agreement may be enforced either in law or in equity, whether the period of limitation has run or not. *Purtle* v. *Bell*, 225 Ill. 523, 526.

But this rule also applies only where there is a dispute as to the line or where the line is unascertained. If the line is not in dispute and the intention of the parties is merely to determine the exact or true line, and in so doing an erroneous line is agreed upon by accident or mistake, the agreement will not be binding and the line will not be established merely because of the agreement previously entered into between the parties. In such a case there is a failure to find the true line through accident or mistake and not an agreement to adopt an unascertained or disputed line; hence the same rule does not apply with reference to possession, estoppel, etc. For a discussion of the foregoing rules, see *LaMont* v. *Dickinson*, 189 Ill. 628; *Henderson* v. *Dennis*, 177 Ill. 547; *St. Bede College* v. *Weber*, 168 Ill. 324; *Clayton* v. *Feig*, 179 Ill. 534; *Kincaid* v. *Vickers*, 217 Ill. 423; *Sonnemann* v. *Mertz*, 221 Ill. 362; *Purtle* v. *Bell*, 225 Ill. 523; 4 Am. & Eng. Ency of Law, 2nd ed, 860-862; 5 Ency. of Law and Proc. 834.

Applying the law as announced in those cases to the facts in the case at bar, the question must be whether the facts come within the first or last rule above announced; in other words, whether the boundary line, before the survey of 1921, was in dispute or unascertained, or whether the survey was made to merely determine the true line.

From the record before us it appears that in the year 1921, the location of the boundary line between the land of plaintiffs and that of defendant's predecessor in title,

Louis Duginger, in common with several boundary lines in the neighborhood, was lost and could not be definitely established by the parties. The then county surveyor was requested by Harry Ginther, one of the plaintiffs herein, and Louis Duginger, father of defendant herein, to establish the boundary line between the estates of the parties. Louis Duginger, defendant's predecessor in title, and plaintiff Harry Ginther, accompanied the surveyor in establishing the boundary lines between their two estates and Louis Duginger procured and helped set the limestone rock which was at that time placed as a monument. It is to be noted that in projecting the line westward from the located monument, the line thus projected in the year 1921 crossed a large post which Louis Duginger conceded at that time was on the boundary line.

Beginning in the year 1921, after the establishment of the line in question, plaintiff Harry Ginther improved a lane located, then as now, immediately on the north side, or the Ginther side, of the 1921 boundary line, leading to an east-west public road. This lane was used in going to and from the home and farm buildings of plaintiffs. From time to time, from 1921 to 1948, this lane was improved by gravel and shale and white rock so that it became an all-weather year-round road. In 1921 ditches were cut on each side, Louis Duginger and plaintiff Harry Ginther working together. In addition to the ditches, a grass strip two to three feet wide extended on either side of the graveled portion of the lane.

There were no developments concerning the boundary line or the real estate in dispute from 1921 until 1949. There is testimony in the record that during his lifetime Louis Duginger assisted plaintiffs in keeping the ditch on the south of the plaintiffs' lane clear and free of accumulated dirt and debris. There is considerable conflict in the evidence regarding whether, in subsequent farming operations of the Duginger land to the south of the boundary

line thus established, there were trespasses over the line onto the Ginther property to the north, but when all the evidence is considered, it is apparent that the monument as established and the boundary line as projected in the year 1921 were acquiesced in by Louis Duginger until his death in 1934, and by his successors in title for many years thereafter until the beginning of the present controversy in the late 1940's.

Defendant contends that plaintiffs' evidence was insufficient to establish that plaintiffs had acquired good title to the disputed strip of land by adverse possession in that the record does not disclose a factual situation where dominion and control were exercised by plaintiffs to a definite line or where some gesture of ownership was uninterruptedly extended for the full statutory period. A distinction should be made at the outset in discussing this point; that to prove acquiescence of Louis Duginger and his successors in title to the boundary line as established between the estates of the parties in 1921, it is unnecessary to prove an acquiescence for the period of the statute of limitations, but only to prove that such acquiescence was for a considerable time. When used in this sense, considerable time means a reasonable period of time.

The record is void of any showing that plaintiffs claimed any boundary line between the two estates other than that established in 1921. The evidence presents no proof that either party claimed the line to be unascertainable subsequent to 1921 and prior to 1949. The testimony shows that plaintiffs were always in possession of the lane from 1921 and that possession was never interfered with until 1949. The only conclusion that can be made from the record is that plaintiffs acquired possession of the disputed strip of land in 1921 and that they continued to hold peaceable possession and dominion over the strip until 1949. It is not necessary that land should be enclosed by a fence or that it should be reduced to cultivation. No enclosure

of any kind by a fence or in any other way was necessary to the actual possession of the disputed strip of land. It is the actual occupancy that creates the bar. Such improvements or acts of dominion over the land as will indicate to persons residing in the immediate neighborhood who has the exclusive management and control of the land are sufficient to constitute possession. *Augustus* v. *Lydig,* 353 Ill. 215; *Bugner* v. *Chicago Title and Trust Co.* 280 Ill. 620; *St. Louis, Alton and Terre Haute Railroad Co.* v. *Nugent,* 152 Ill. 119.

Where there is a dispute as to material facts, as appears in this case, the findings of the special master in chancery must be allowed to stand unless it can be said that such findings are clearly against the weight of the evidence. He was in a better position to judge as to the questions in dispute than we are. He saw the witnesses and heard them testify.

We believe the special master in chancery correctly found that the boundaries between the estates were unascertained prior to the 1921 establishment thereof, that by unequivocal acts Louis Duginger, defendant's predecessor in title, acquiesced in the line thus established in that survey, and at that time, and for a sufficient time thereafter, Louis Duginger and his successor in title, acquiesced therein, and the line then established is the boundary line between the two estates.

In view of our conclusion it is unnecessary for us to consider other errors assigned and argued.

The decree of the circuit court of Mason County is affirmed.

*Decree affirmed.*