(No. 36218.

James McLeod, Appellee, *vs.* Clarence E. Lambdin *et al.,* Appellants.

*Opinion filed May 19, 1961.*

HERSHEY, J., took no part.

HERSHEY & BLISS, of Taylorville, (JOHN A. FLEVIN, of counsel,) for appellants.

CARL H. PREIHS, JOE P. LONGWELL, and WILLIAM H. AMLING, all of Pana, for appellee.

Mr. JUSTICE HOUSE delivered the opinion of the court: Plaintiff filed a complaint in the circuit court of Christian County alleging his ownership of the northeast quarter of the northwest quarter and the defendants' ownership of the northwest quarter of the northeast quarter, all in section 21, township 13 north, range 1 east of the third P.M. in Christian County; that for many years there has been a well defined and established dividing line between the two tracts and that defendants had trespassed on his premises and threatened a continuing trespass, thereby causing him irreparable damage. The prayer requested the court to determine and establish the correct boundary line and enjoin the

defendants from destroying or further interfering with the existing fence line.

Defendants filed an answer and a counterclaim in two counts, count I in ejectment and count II for the appointment of a commission to survey and establish the boundary. On motion of the plaintiff, count II of the counterclaim was stricken and the cause was heard by the chancellor on plaintiff's complaint and defendant's counterclaim in ejectment.

At the conclusion of the evidence, plaintiff was permitted to amend his complaint to allege that the boundary line between the two tracts had been established by the respective owners for more than 20 years prior to 1956 along an old hedge fence. A decree was entered finding that in the year 1912 and prior thereto the then owners accepted and recognized the hedge fence as the boundary line between the two tracts, fixed the boundary line on the line of the old hedge fence, and enjoining the defendants against further interference.

The McLeod tract lies to the west of and adjoins the Lambdin tract. Since 1912, and for many years prior thereto, a hedge fence consisting of trees up to two feet thick, ran north and south between the two tracts about 20 to 25 feet east of the true government survey line. The hedge fence line was recognized, utilized and accepted by the respective owners as the line between their two tracts for more than 20 years prior to the commencement of the present action. Thomas Pollard testified that he was a tenant on the Lambdin tract from 1923 to 1955, and during this time he "went by the old hedge fence" as the dividing line. The hedge fence was removed in 1949. Pollard cleared the north half in the fall, and in the spring the plaintiff, who had acquired ownership of his tract about 1948, cleared the south half. From 1949 to 1955, Pollard and the plaintiff followed an arrangement whereby, in the fall of each year, they would erect an electric fence along the line of the former hedgerow for the purpose of grazing and pasturing

cattle in their respective fields. The electric fence ran from a two-foot hedge stump which remained at the south end to a wooden stob which Pollard had set at the north end of the former hedgerow. During the spring and summer months the fence, except for the stump and stob, would be taken down in most years to facilitate cultivation of their fields up to the former hedgerow line. In 1955, after defendants had purchased the Lambdin tract, they asserted ownership, not to the fence line but over to the government survey line, and twice tore down plaintiff's electric fence. The plaintiff then initiated this action to establish the line and to enjoin the defendants from removing or destroying his fence.

' Defendants contend that the relief sought by plaintiff in his complaint did not confer equity jurisdiction on the court, that the law governing the settlement of boundary disputes of this nature does not apply to this case, and that the defendants were entitled to a survey by court-appointed commissioners to ascertain the true dividing line and to a judgment on their counterclaim in ejectment.

Where a boundary between two tracts is unascertained or in dispute, the line may be established, first by parol agreement and possession; second, by an agreement implied from unequivocal acts and declarations of the parties and acquiescence for a considerable period of time; and third, in the absence of any agreement, by undisturbed possession for more than twenty years. When an unascertained or disputed boundary is actually established under either or all of these alternative methods, it will be binding on the parties and their privies in estate and may be enforced or protected in an appropriate action in equity. (*Ginther* v. *Duginger*, 6 Ill.2d 474; *Nitterauer* v. *Pulley*, 401 Ill. 494; *Kandlik* v. *Hudek*, 365 Ill. 292; *Purtle* v. *Bell*, 225 Ill. 523; *Clayton* v. *Feig*, 179 Ill. 534.) We believe that the many years during which the respective owners farmed up to the hedgerow and utilized it as a fence to contain their cattle fairly implies

their agreement to establish and recognize the hedgerow as the boundary line. Even absent an agreement, plaintiff and his predecessors in title held undisturbed possession over to the hedgerow line for more than 20 years prior to Lambdin's purchase and plaintiff has been in possession under claim of right at all times since.

Defendants' contentions that they were entitled to a survey or to a judgment in ejectment is unavailing. This court held in *McIntyre* v. *McIntyre,* 287 Ill. 544, that while the statute provides a means of determining division lines and corners it does not follow that such is the only method. In *Ginther* v. *Duginger,* 6 Ill.2d 474, it was pointed out that an action in ejectment does not provide affirmative relief against continued acts of entry. It is axiomatic that where equity has assumed and has jurisdiction for the purpose of granting equitable relief the court may determine all the issues of the case, whether legal or equitable. We are of the opinion that this case falls within the scope of the rule and that plaintiff's complaint stated a cause of action for equitable relief.

Defendants' further contention, that the allegation in plaintiff's complaint that defendants are owners of the northwest quarter of the northeast quarter is a binding admission that the defendants owned over to the government survey line, thereby precluding the plaintiff from claiming ownership over to the former hedgerow line, is similar to that made in *Kandlik* v. *Hudek,* 365 Ill. 292. There a common owner, by separate deeds, divided part of a southwest quarter section lying west of a river. In order to equalize the acreage in each tract, the dividing line was established approximately 1.98 chains north of the government survey line. A fence was erected on the voluntary division line. For many years thereafter in numerous conveyances the two tracts were conveyed by reference to either the north half or the south half of the southwest fractional quarter rather than to the fence line. When a boundary dispute occurred

and the problem was litigated, the question arose whether the descriptions in the deeds should be treated as referring to the subdivision lines established by government survey or the division line acquiesced in by the owners. It was held that the division fence, which had been established, maintained, recognized and acquiesced in as the boundary line for more than twenty years, would control.

It is a matter of common knowledge that many sections are not perfectly square, and that many quarter-quarter sections, or "forties," do not contain exactly 40 acres. If the rule in the *Kandlik case* were not followed practically every boundary line would be suspect and open to litigation. The allegation of defendants' ownership of the "northwest quarter of the northeast quarter" was only a means of describing the location of defendants' tract and does not preclude plaintiff from proving that the recognized boundary line was other than the true government survey line.

The final question is whether the boundary line now claimed by the plaintiff is the same as the line of the old hedge fence. At the south end there remains a two-foot stump of one of the former hedgerow trees, a monument of considerable permanency. At the north end Pollard placed a stob about 2 inches in diameter to a depth of approximately 2 feet. While the exact time of placing the stob is not given, it is established that it was the same year the hedgerow was removed. Both the plaintiff and Pollard testified that the stob was placed exactly in the line of the old hedge and remained there. When the electric fence was put up they used the old stump at the south end and the stob at the north end as markers and the north end was anchored to an angle iron immediately behind the stob. The electric fence was stretched between the markers and both say it was on the line of the old hedge fence. These two men, who cleared the hedge fence, testified that they knew its location and that the stob and electric fence were on the exact line. Pollard's testimony is particularly impressive

since he tenanted the farm for some 23 years under the defendants' predecessors in title, farmed up to the hedgerow during all those years and knew its exact location. By this uncontradicted evidence plaintiff has sustained the burden of proving the certainty of the boundary line.

We are of the opinion that the decree of the circuit court of Christian County is supported by the record and it is accordingly affirmed.

*Decree affirmed.*

Mr. JUSTICE HERSHEY took no part in the consideration or decision of this case.