CHARLES E. BOYER *et al.*, Plaintiffs-Appellees, *v.* FRANK V. NOIROT, Defendant-Appellant.

Third District    No. 80-287

Opinion filed June 29, 1981.

HEIPLE, J., dissenting.

Robert G. Day, Jr., of Moehle, Reardon, Smith & Day, Ltd., of Peoria, for appellant.

Michael A. Fleming, of Peoria, for appellees.

Mr. JUSTICE BARRY delivered the opinion of the court:

This appeal involves a dispute over a nine-inch strip of land along the boundary line between two residential lots in the city of Peoria, Illinois. Plaintiffs Charles and Toni Boyer purchased the house and lot 40 in Oak Lawn Addition in June of 1977, and defendant Frank Noirot lives in the house on adjoining lot 41 to the east which he purchased in March of 1977. Each lot is 30 feet in width, and plaintiff's black-top driveway separates the two houses. In 1978 defendant had a survey made of their common boundary. The survey indicated that plaintiffs' driveway encroaches upon the front portion of defendant's lot by nine inches and that plaintiffs' garage encroaches seven inches over the line at the end of the driveway to the rear of plaintiffs' house.

After the survey, defendant claimed a right to the nine inches of the driveway, and on several occasions thereafter, defendant attempted to prevent plaintiffs from using the driveway by such means as parking his truck in his front yard with two wheels on the disputed nine-inch strip of plaintiff's driveway, thus blocking plaintiffs' access, and by driving a five-foot metal stake into the driveway. Plaintiffs then brought suit to determine title to the disputed strip. Plaintiffs alleged four different theories to justify their possession of the nine-inch strip: (1) title by the doctrine of boundary line by acquiescence; (2) title by adverse possession; (3) easement by implication; and (4) easement by prescription.

The evidence at the bench trial indicated that plaintiffs' lot had been owned by Kenneth Hays from 1946 to 1963, and during his residency, the lot contained the house and a small one-car garage which was reached by means of a concrete driveway just east of his house. The driveway went

straight back along the side of the house until it reached the rear of the house where it angled somewhat to the left to provide an approach to the garage door. At one time Hays also owned lot 41 next door when it was a vacant lot. He testified that at that time there was a stake in the ground at the east edge of the concrete driveway which he took to be the boundary line between the two lots.

The small garage was replaced in 1973 by the then owner of lot 40, Joseph Bittner, who had a two-car garage built at the same location as the previous garage. He also replaced the concrete driveway with a blacktop driveway that went straight back along the east side of his property to the garage. Bittner testified that the east wall of the new garage was placed upon the same line as the east wall of the old garage, and that the blacktop was placed exactly where the concrete driveway had been located. Bittner also testified that the then adjoining landowner Wessel requested that blacktop be placed on a strip of his lot adjoining the west side of his house so that the blacktop covered the entire area between the two houses. Wessel paid for the extra blacktop.

One of the previous owners of lot 41 installed a chain link fence extending from the rear of his house north to the alley. Defendant testified that the fence is six inches east of the boundary line. The fence is still in place, and several of the photographs introduced into evidence show that there is about two feet between the east wall of the new garage and the fence. One former property owner stated that there was room to walk and to stand when he painted the east side of the garage. All of the former owners of both properties indicated that all use and maintenance of the driveway had been by the owners of lot 40 exclusively and that all had regarded the east edge of the driveway as the boundary between the two lots. Contradictory evidence was provided by Hays, however, who stated that he told Bittner that the new garage was not being placed "square" on the lot and that it was infringing on lot 41.

In 1978, defendant wanted to remove the blacktop on his lot adjoining his house because it was pushing against his foundation and allegedly causing water leakage into his house. This caused him to have the boundary line surveyed and resulted in the discovery that the garage and driveway encroached over the boundary as determined by the survey. Plaintiffs later had their own survey made, which confirmed defendant's survey.

The trial court ruled that the boundary line would be and was nine inches east of the surveyor's pins, beginning at the street and running back to the alley, along the east edge of the blacktop driveway. The court stated that it was basing its decision upon the doctrine of boundary line by acquiescence and equity, and not upon any of the other theories alleged by plaintiffs in their complaint. Defendant has appealed, claiming that the

evidence does not support the court's finding of boundary by acquiescence.

Both parties agree that the applicable rule of law for establishing the boundary line in this case was set forth in *McLeod v. Lambdin* (1961), 22 Ill. 2d 232, 235, 174 N.E.2d 869, 871, as follows:

> "Where a boundary between two tracts is unascertained or in dispute, the line may be established, first by parol agreement and possession; second, by an agreement implied from unequivocal acts and declarations of the parties and acquiescence for a considerable period of time; and third, in the absence of any agreement, by undisturbed possession for more than 20 years. When an unascertained or disputed boundary is actually established under either or all of these alternative methods, it will be binding on the parties and their privies in estate and may be enforced or protected in an appropriate action in equity."

■■ Defendant first argues that in order to invoke the doctrine of boundary by acquiescence, the location of the line must have been in dispute at some time in the past. He cites no authority for this position, and in fact, in *McLeod* the two adjoining farmers had amicably used the old hedge row as the boundary line for 32 years prior to the 1955 dispute that led to the litigation between McLeod and Lambdin. The same is true here where the east edge of the driveway was considered to be the boundary of lots 40 and 41 from 1946 until 1978 when the survey was made. (See *Horn v. Thompson* (1945), 389 Ill. 176, 58 N.E.2d 896, when a concrete sidewalk was held to have evidenced the exercise of ownership over the strip lying beneath it.) The fact that the line is *now* in dispute, and was not previously ascertained by survey, is sufficient to bring the instant case within the scope of the doctrine.

■■ Defendant now contends that plaintiffs failed to establish any agreement, either express or implied, as to ownership of the nine-inch strip. To the contrary, if the court believed Bittner's testimony that the blacktop was placed on exactly the same line as the concrete driveway, then quite clearly the adjoining owners previous to the party litigants had performed many acts which indicated an implied agreement to treat the east edge of the driveway as the boundary line. For example, all the prior owners accepted the exclusive right of the resident on lot 40 to use and maintain the entire driveway. No one objected to the location of the garage during that entire time. Clearly none of the previous owners of lot 41 made any claim to the strip now in dispute. Taking as true the testimony that both the old and new garages and the old and new driveways had the same east boundary, we must conclude that there was an implied agreement established.

■■ Defendant next argues that plaintiffs failed to establish a 20-year

period of acquiescence since both lots were owned by one owner for a period of time, ending in 1963, and the 20-year term could not begin until ownership was severed. It has been held that acquiescence need not be proved for the period of the statute of limitations but only that such acquiescence was for a considerable time, meaning a reasonable period of time. (*Ginther v. Duginger* (1955), 6 Ill. 2d 474, 129 N.E.2d 147.) Accordingly, plaintiffs were not required to prove an uninterrupted 20-year period of acquiescence, and the proof here was adequate to establish acquiescence for a reasonable period.

Defendant's final issue is that the court exceeded its authority by fixing the boundary all the way north to the alley when the line north of the garage was never in issue. Actually, the evidence is clear that the boundary line was always assumed to be a straight north-south line from the street in front to the alley in back. We are not persuaded that the trial court erred in its ruling.

Defendant also discusses the insufficiency of the evidence to establish plaintiffs' other theories of recovery, but these questions are not properly before us upon appeal since the trial court expressly declined to base its decision upon any of those counts of the complaint.

Having concluded that the judgment was not contrary to the manifest weight of the evidence, we affirm.

Affirmed.

STOUDER, J., concurs.

Mr. JUSTICE HEIPLE, dissenting:

I do not agree that the doctrine of boundary by acquiescence supports the result reached by the majority. The location of the boundary must have been in dispute or unascertained at some time in the past and then acquiesced in, in order that the boundary be established by acquiescence. The instant case is quite different.

The majority finds that the *present* dispute over the boundary line is sufficient to bring the instant case within the scope of the doctrine. Such a position is untenable. The doctrine of boundary by acquiescence is a well-settled rule providing for resolution of a dispute. Barring such a dispute, or if the location of the boundary is known, a parol agreement to change the boundary is ineffective, by itself, to pass title or to change the original grant. (*Wright v. Hendricks* (1944), 388 Ill. 431.) Simply stated, the parties must record a deed.

The record reveals that prior to the present litigation, the boundary line was never unascertained. The lots were surveyed and platted. While the exact line was not obvious without reference to surveyors' pins, the

line was indeed ascertainable. Moreover, no dispute arose between the present or the former landowners as to the boundary line between the adjoining lots. And as to the present dispute, there is no acquiescence. Thus, this case is outside the application of the doctrine. The testimony of the landowners indicates that the boundary line was believed by them to be the east edge of the concrete driveway. The concrete driveway endured until 1973 when Boyer's predecessor had the concrete driveway and garage removed. These were replaced by a larger two car garage and blacktop driveway. There is much conflicting evidence as to where the blacktop driveway was placed in relation to the original concrete one. From the testimony and from the photographs, it is apparent that we may not assume that the blacktop driveway was limited to the area covered by the concrete driveway. The trial judge, in his order of February 29, 1980, and relying on the doctrine of boundary by acquiescence, determined the boundary to be the most easterly edge of the concrete driveway and "consequently that the easterly edge of lot 40 is the easterly side of the blacktop driveway now existing on the east side of lot 40 * * *." This is not supported by the record. The easterly edge of lot 40 is where the surveyors said it is. That is the evidence the trial court should have heeded in this case.

For the reasons herein stated, I dissent from the views and result reached by the majority. This case should be reversed and remanded.